[Civ. No. 6782. First Appellate District, Division Two.—June 28, 1929.]

CITY OF ALBANY (a Municipal Corporation), Appellant, v. WM. F. MEYER, Respondent.

Lovett K. Fraser for Appellant.

Clark, Nichols & Eltse and Reece Clark for Respondent.

NOURSE, J.—The plaintiff, a municipal corporation, sued for libel in the sum of five thousand dollars for damages to its good name, reputation and credit, and asked for an additional sum of five thousand dollars as punitive damages. A general demurrer to the complaint was sustained without leave to amend, and from the judgment in favor of defendant which followed the plaintiff has appealed upon a typewritten transcript.

The complaint alleged that the defendant wrongfully and maliciously and with intent to injure the plaintiff published a false, libelous and defamatory article reading as follows: "Financial Condition of Albany: The City of Albany now faces bankruptcy, borrowing money from the banks at 7% interest in order to pay employees. No money is available for street improvements. Special assessments will have to be made for repairs." It was further alleged that said article was untrue and that it was published maliciously with intent to injure the plaintiff in its business, destroy its financial standing and create doubt in the minds of the people of Albany and others in the bay region as to its solvency and ability to perform its contracts and pay its bonds and debts.

From the briefs it appears that the circular in question was published by the defendant and a number of other citizens of Albany in opposition to a proposal for the issuance of bonds for the erection of a new school building by the city. In support of the demurrer the respondent relies upon the provisions of section 9, article I, of the Constitution, which gives every citizen freedom to speak, write and publish his sentiments on all subjects "being responsible for the abuse of that right," and upon the authority of *City of Chicago* v. *Tribune Publishing Co.*, 307 Ill. 595 [38 A. L. R. 1368, 139 N. E. 86]. The appellant relies upon the English case of *Manchester* v. *Williams*, [1891] 1 Q. B. Div. 94. An exhaustive search of the authorities discloses that these two cases are the only two reported which involve the question of the right of a municipal corporation to sue a citizen for libel. The English case upon which the appellant relies

is not authority for the point cited. That was an action by the city of Manchester against a citizen for libel consisting in the published statement that bribery and corruption existed in certain departments of the city council, and that the city authorities were either parties thereto or culpably ignorant thereof. In holding that the action would not lie the English court said: "A corporation may sue for libel affecting property," and cited the decision of Pollock, C. B., in *Metropolitan Saloon Omnibus Co.* v. *Hawkins.* The case cited, however, was one by a private corporation for an imputation of insolvency, and in the course of that opinion Pollock, C. B., said that a corporation "could not sue in respect of an imputation of murder, or incest, or adultery, because it could not commit those crimes. Nor could it sue in respect of a charge of corruption, for a corporation cannot be guilty of corruption, although the individuals composing it may." It is apparent that in the Manchester case the reference to the Hawkins case was for the purpose of distinguishing between a suit for libel resulting in an injury to property and one which charged corruption or the imputation of crime. There is not in either opinion any intimation that a municipal corporation, as distinguished from a private corporation, might sue one of its citizens for libel whether the libel affected the property of the citizen or merely affected the personal reputation of the city or its officers.

In *City of Chicago* v. *Tribune Publishing Co., supra,* the action was instituted by the city of Chicago because of published statements reflecting upon the credit and financial standing of the municipality and the mismanagement of its affairs by those then in office. These publications were made during the heat of a political campaign in which the Tribune claimed that the city administration was endeavoring to gain political control of the state at large. The court held that the city could not maintain the action principally upon the ground that the right of free speech guaranteed by section 4 of article II of the Constitution of the state of Illinois rendered all utterances or publications against the government or the administration then in power, excepting those tending to violate law or overthrow by force or other unlawful means the existing government, absolutely privileged. That section of the Constitution is substantially the same as

the provisions of section 9 of article I of the Constitution of this state.

In the course of the opinion in the Chicago case the court pointed out that the old common-law right of the government to punish or sue for libel which prevailed in the days of the divine right of kings on the theory that the king could do no wrong is fundamentally out of harmony with the whole American system of government, which is based upon the theory that the people are sovereign, that its magistrates, as servants of the people can do wrong, and that the people have the fundamental right to criticise them and to expose their inefficiency and corruption. The opinion carefully points out the distinction between criticism of the administration of government and publications tending to incite to crime or to the overthrow by force or other unlawful means the existing form of government, and also points out that there should be no distinction in principle between criminal prosecutions for libel under the old common-law doctrine and civil actions for damages for libel, because in the latter class of actions, if the government should be permitted to sue its citizens for damages for every false or malicious criticism of its ministers who are temporarily conducting its affairs, the punishment of the citizen might be as severe as any that could be obtained under a criminal prosecution.

But on the question of privilege arising from the express provisions of the state Constitution and based upon the fundamental right of liberty guaranteed by the Constitution of the United States, the court said: ''It follows, therefore, that every citizen has a right to criticise an inefficient or corrupt government without fear of civil as well as criminal prosecution. This absolute privilege is founded on the principle that it is advantageous for the public interest that the citizen should not be in any way fettered in his statements, and where the public service or due administration of justice is involved he shall have the right to speak his mind freely.'' With this principle we agree. The privilege found in the section of the Constitution goes to every citizen of the state in the manner of the free expression of his sentiments on all public subjects, and by the provisions of that section he is responsible only for the abuse of that right.

This constitutional privilege controls over any of the provisions of section 47 of the Civil Code specifying privi-

leged communications as between persons. If in any case a municipal corporation might maintain libel actions against one of its citizens for published criticism of the conduct of its affairs or of its administrative officers an essential element of the complaint would be the allegation that such publication was in abuse of the right of free speech guaranteed by this section of the Constitution. The complaint under consideration does not contain any allegations which charge that this right of the citizen was abused in the publication complained of. The mere fact that it is said to have been false and malicious does not meet the point. Falsity of the publication is not an abuse of the right of free speech, and the charge that the publication was malicious necessarily means that the respondent spoke with malice toward the municipal corporation and not with malice toward the administrative officers thereof, and if this could under any theory be grounds for an action on the part of the municipal corporation it would be necessary to go further and allege facts showing such malice, or facts which would take the publication out of the privilege found in the constitutional section.

 But aside from any technical objections to the form of pleading, "this action is out of tune with the American spirit, and has no place in American jurisprudence," as said the Illinois court in the Chicago case, because, if the administrative officers of any branch of the government may use the process in libel, either civil or criminal, to control criticism of their financial policies in the management of the government's business then the constitutional guaranty of free speech beomes a shadow without a substance. That right means nothing if it does not mean a guaranty of freedom of thought and of speech antagonistic to those in power as well as freedom of that which is favorable to or commendatory of them. Mr. Justice Holmes has expressed the view in his dissenting opinion in the recent case of *United States* v. *Schwimmer,* 279 U. S. 644 [73 L. Ed. 889, 49 Sup. Ct. Rep. 448] (May 27, 1929, No. 484, October Term, 1928), that "if there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought—not free thought for those who agree with us but freedom from the thought that we hate."

Judgment affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 27, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1929.

All the Justices present concurred.