**JOHNSON CITY, Plaintiff-Appellant,**

v.

**COWLES COMMUNICATIONS, INC., et al.,
Defendants-Appellees.**

Supreme Court of Tennessee.

March 6, 1972.

James H. Epps, Jr., James H. Epps, III, Johnson City, for plaintiff-appellant.

Joe W. Worley, of Wilson, Worley, Gamble & Dodson, Kingsport, for Cowles Communications, Inc.

Mrs. Joan Roesgen, E. F. Smith, Edwin L. Treadway, W. Scott Trundle, Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, for Kingsport Pub. Corporation.

## OPINION

ERBY L. JENKINS, Special Justice.

This is an appeal in error from the Circuit Court of Washington County, Tennessee. The sole question for decision is whether the learned trial judge was correct in sustaining defendant's demurrers. The trial judge rendered his decision fol-

lowing the submission of briefs and oral argument.

Plaintiff, a municipal corporation, filed a declaration which, as amended, charged both libel and conspiracy to libel against the following defendants and sought forty-eight million ($48,000,000) dollars in compensatory damages from Cowles Communications, Incorporated, the publisher of Look Magazine; Mrs. Joan Roesgen, author of the article which gave rise to this suit, and her employer, Kingsport Publishing Company. The article in question was published in the July 14, 1970 issue of Look Magazine and is based on events surrounding the arrest and prosecution of two students at East Tennessee State University, located in Johnson City, on charges of desecration of the United States flag.

It should be noted at this point that in the original declaration and summons "Look Magazine, a separate corporation and/or operated as Look Magazine Division of Cowles Communications Incorporated" was made a party defendant. However, the lower court ruled that the pleadings filed by defendant Cowles Communications, Incorporated, indicated that Look Magazine was merely a division of Cowles and not a separate entity. Therefore, there are only three defendants, rather than four as originally styled, and Look Magazine is before this Court by virtue of service of process upon Cowles Communications, Incorporated.

In order to properly consider the learned trial judge's decision, with which we agree, it is necessary to briefly allude to the allegations of the declaration.

The plaintiff, Johnson City, is a municipal corporation, created by the State of Tennessee by charter (Chapter 189, Private Acts of 1939, and Acts amendatory thereof), and exercises its official acts through a Mayor and Board of Commissioners. Among the powers granted to plaintiff is the right to "sue and be sued, implead and be impleaded, in all courts of law and equity, and in all actions whatsoever."

That defendant Mrs. Joan Roesgen is a staff writer for defendant, Kingsport Publishing Corporation; that she wrote the article in question which is alleged to be libelous per se, either at the request of her co-defendants or was offered by her to them and accepted, published, and disseminated via the July 14, 1970 issue of Look Magazine in violation of T.C.A. § 39–2702.

That this article was published in and disseminated outside the State of Tennessee only, that is, the article was not published and distributed in those issues of Look Magazine set apart for distribution inside the State of Tennessee.

The plaintiff alleges that the article is defamatory in that (1) it depicts Johnson City as being so far behind the times as to think that the United States flag has only forty-eight stars; (2) it attempts to embarrass Congressman James H. Quillen, the City of Johnson City, and residents thereof; (3) it depicts Johnson City as a place which represents everything terrible and a place to be avoided in that it is a fascist, not free, state where "fascist pigs" live, where "hippie pads" and "communist cells" exist under police protection, and where the people are indolent and lazy and "wild parties" exist under surveillance of and with acquiescence by the police department; (4) it depicts the conduct of Lewis May, District Attorney General, as being such as refusing to enforce the law and allowing the law to be violated with his knowledge, consent, and approval; and (5) it depicts Johnson City as a place where industry would not locate.

The plaintiff thus alleges that the article is a malicious defamation in that it is intended to provoke the plaintiff to wrath, to expose it to public hatred, contempt, and ridicule, thereby depriving plaintiff of its usual and ordinary income, benefits of public confidence, and social intercourse of its inhabitants, and tending to scandalize the plaintiff, not only in its municipal capacity, but its inhabitants in the eyes of the world.

As a part of its declaration, the plaintiff filed many exhibits which largely identified the content of its city, that is, the number of industries, schools, churches, roads, etc. The declaration itself as amended also set forth in detail the content of the city and cited quotations from famous authors, including the Holy Bible, etc.

Although the lower court thought that plaintiff's pleadings may have been "somewhat prolix" the learned trial judge overruled defendants' motion to strike various portions of the declaration as being immaterial and too indefinite, but did sustain the demurrer.

We now move to a consideration of the demurrers which were filed by each of the defendants, and which because of their similarity, were appropriately treated together by the trial court.

The first serious question raised by the demurrer was whether the plaintiff, as a municipal corporation, was a "person" within the meaning of T.C.A. § 39–2701, with a reputation protected by this statute.

"A libel is the malicious defamation *of a person,* made public by any printing, sign picture, representation, or effigy, intending to provoke *him* to wrath, or expose *him* to public hatred, contempt, or ridicule, or to deprive *him* of the benefits of public confidence and social intercourse; or any malicious defamation made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke *his* surviving relatives or friends." (Emphasis added.) § 39–2701 T.C.A.

By demurrer, each of the defendants contended that plaintiff was not a "person" under this statute. Nor was it defined as such a "person" by its charter. That without this status it does not have that character of reputation protected by the statute from injury by defamation.

It was also contended that this suit could not be maintained because it violated the Constitutions of the United States and the State of Tennessee, particularly the freedom of speech and press guarantees under the First and Fourteenth Amendments of the Constitution of the United States.

■ The second serious question raised by demurrer was that the matters set out in the Look article were absolutely privileged.[1]

Plaintiff's entire cause of action is predicated upon the fact that as a corporation it depends upon the financial support of the public for its financial existence. Plaintiff has cited numerous authorities holding that a private, non-profit corporation, which depends upon public acceptance for financial support, may be defamed in its business reputation. However, these citations completely overlook the distinction between a private, non-profit corporation, which depends upon gifts for its financial existence, and the plaintiff, a municipal corporation, which derives its financial support largely through its power of taxation.

Plaintiff candidly admits that it is unable to find one case wherein it has been expressly held by any court that a municipal corporation has a reputation which may be the subject of libel; or that a municipal

---

1. This ground of demurrer was attacked on the basis that the substance of the ground made it a plea in bar, to the merits, not a ground of demurrer. Dupont Engineering Co. v. Nashville Banner Publishing Co., D.C., 13 F.2d 186, was cited for this proposition.

While this may be the case where the claim of qualified privilege is involved, it is not the case where the question is absolute privilege. A demurrer may be used to take advantage of an absolute privilege where this appears on the face of the pleadings. Scott v. Statesville Plywood & Veneer Company, 240 N.C. 73, 81 S.E.2d 146 (1954); City of Chicago v. Tribune Company, 307 Ill. 595, 139 N.E. 86 (1923). See also Annotations 51 A.L.R.2d 552 at page 558.

corporation is a "person" within the meaning or definition of libel statutes.

It appears from the statute that municipal corporations are not included. Ordinarily, absent legislation, neither the state, a political subdivision thereof, nor a municipal corporation, is a "person" within the meaning of a statute using the term. See City of Memphis v. Laski, 9 Heisk. 511, 56 Tenn. 511 (1871); Hansen v. Commonwealth, 344 Mass. 214, 181 N.E.2d 843 (1962), and the many cases there cited.

We, therefore, agree with the learned trial judge that the plaintiff is not a "person" within the meaning of T.C.A. § 39–2702 and so cannot sue for defamation of character.

We think the defense of absolute privilege is good. It is the general rule that utterances or publications against a government must be considered absolutely privileged. This proposition is in keeping with our form of government, so that the citizen, private or corporate, is free to utter and write critically of its government, because our form of government is based upon the principle that sovereignty rests with the people. See City of Chicago v. Tribune Company, 307 Ill. 595, 139 N.E. 86 (1923) and State of Louisiana v. Time, Inc., 19th Jud. Dist. Ct., Parish of East Baton Rouge, Number 141–758 (1970), affirmed La.App., 249 So.2d 328, review denied, 259 La. 761, 252 So.2d 456.

We agree completely with this language used by the Illinois Supreme Court:

"The struggle for freedom of speech has marched hand in hand in the advance of civilization with the struggle for other great human liberties. History teaches that human liberty cannot be secured unless there is freedom to express grievances . . . . For 100 years the crown forbade the publication of a newspaper without a license. As the seventeenth century drew to a close the right to publish without a license was recognized, and from that time to this no English government has claimed or practiced the royal prerogative of licensing the press. Licensing of the press was never effective in the American colonies. . . .

"There were few prosecutions for libel on government in the American colonies, and no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence. . . .

"When the people became sovereign, as they did when our government was established under our Constitution and the ministers became servants of the people, the right to discuss government followed as a natural sequence . . .

". . . . It is one of the fundamental principles, therefore, of the American system of government, that the people have the right to discuss their government without fear of being called to account . . . . Prosecution for libel, like the censorship, have fallen out of our constitutional system. When the press errs it is by the press itself that its errors are corrected." City of Chicago v. Tribune Co., 307 Ill. 595, 139 N.E. 86 (1923).

The foregoing was said in a case also tried on demurrer, as was this, where, responding to the contention the demurrer admitted the defendant had maliciously defamed the city, the Illinois Court said:

". . . . By its demurrer appellee admits it published malicious and false statements regarding the city of Chicago . . . it is better that an occasional individual or newspaper that is so perverted in judgment and so misguided in his or its civic duty should go free than that all of the citizens should be put in jeopardy of imprisonment or economic subjugation if they venture to criticize an inefficient or corrupt government."

". . . . This action is out of tune with the American spirit, and has no

place in American jurisprudence." City of Chicago v. Tribune Co., supra.

The content and reasoning in Chicago-Tribune was, in the judgment of this Court, approved, not made obsolete, by the opinion of the United States Supreme Court in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

If this action could be maintained, every report of corruption, graft and thievery, most of which cannot be based on hard evidence, sufficient to convict, would be smothered by the threat of an expensive suit. Every criticism of public expenditure, policy, management or conduct of public affairs would place its utterer in jeopardy. It is difficult to imagine anything more destructive of democratic government than the power in the hands of a corrupt government to stifle all opposition by free use of the public treasury to silence critics by suit. This Court is satisfied that this is not the law under which we live, and trust that it will never be the law. Such a law would be a bad law, a law inimical to democratic government.

▬ After thorough consideration, we are convinced that the trial judge was correct in sustaining the demurrer filed by each of the defendants. We hold that plaintiff, as a municipality, is not a "person" within the meaning of the libel statutes of this state and does not possess a reputation which may be the subject of libel. Further, we hold that the article in question is absolutely privileged for the reason that any citizen, private or corporate, of these United States has an absolute privilege to make any statements, excepting only treasonable utterances, concerning a government, city or otherwise. Government has no capacity to apply either criminal or civil sanctions to the speaker or writer, without regard to the falsity or malice of the comment, for such sanctions are forbidden under the First and Fourteenth Amendments to the Constitution of the United States.

The trial judge's memorandum opinion indicates much study and a keen understanding of the issues. It is a model of legal writing and has been extremely helpful to this Court.

The decision of the trial court is accordingly affirmed.

DYER, C. J., and CRESON, HUMPHREYS, and McCANLESS, JJ., concur.