178 N.J. Super. 481 (1981)
429 A.2d 431
WEYMOUTH TOWNSHIP BOARD OF EDUCATION, PLAINTIFF,
v.
HERMAN WOLF, INDIVIDUALLY AND AS PRESIDENT; JOHN TORBYN, INDIVIDUALLY AND AS SECRETARY, AND THE TAXPAYERS ASSOCIATION, INC. OF WEYMOUTH TOWNSHIP, A NONPROFIT CORPORATION OF NEW JERSEY, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided February 26, 1981.
Gerald F. Miksis for plaintiff (Lashman & Kupperman, attorneys).
Michael J. Gruccio for defendants (Milstead & Ridgway, attorneys).
*482 GIBSON, J.S.C.
This is an action for defamation where defendants have moved for summary judgment. Raised by this motion is the question of whether or not a governmental entity may maintain an action for defamation in its own right. There do not appear to be any reported cases in New Jersey which have addressed the issue and the question has received limited attention nationally. For the reasons to be stated below, however, it is the opinion of this court that the question should be answered in the negative.
Plaintiff is a local board of education. Defendants include a taxpayers' association and certain of its members. Plaintiff alleges that it was defamed by reason of certain remarks published by defendants, the substance of which indicates that the board misused, lost or possibly embezzled substantial school board funds. It is asserted that these statements were untrue, that defendants knew they were untrue and that they maliciously published the statements with intent to injure plaintiff. For purposes of the within motion the facts related above are admitted. R. 4:46-2.
The few out-of-state cases which have considered whether a governmental entity, such as the board of education here, may maintain an action for defamation in its own right have consistently concluded that it cannot. Annotation, "Right of Governmental Entity to Maintain Action for Defamation," 45 A.L.R.3d 1315 (1972). The leading case in this area is Chicago v. Tribune Co., 307 Ill. 595, 139 N.E. 86 (Sup.Ct. 1923). In that case the city charged the defendant newspaper with publishing a series of defamatory articles which claimed that Chicago was broke, that bankruptcy was just around the corner and that the administration had "busted the city." Plaintiff alleged that the articles were untrue and maliciously made with intent to injure the city's credit and financial standing. The court sustained the defendant's demurrer to the claims, holding that speech or writing directed against a governmental entity was absolutely *483 privileged. 307 Ill. 595, 139 N.E. at 90. The only restriction on this privilege was held to be where the speech or writing seeks to persuade others to violate existing law or overthrow the existing government by force or other unlawful means. Ibid.
... [E]very citizen has a right to criticize an inefficient or corrupt government without fear of civil as well as criminal prosecution. This absolute privilege is founded on the principle that it is advantageous for the public interest that the citizen should not be in any way fettered in his statements, and where the public service or due administration of justice is involved he shall have the right to speak his mind freely.
The court noted, further, that the American system of government is founded upon the principle that the citizen is the source of all authority and is thus sovereign. When acting in that sovereign capacity, as he presumably does in expressing his views on government, he is discharging his public duties and must be given the same privilege afforded to members of the legislature, judges and other persons engaged in the administration of justice. 307 Ill. 595, 139 N.E. at 91. The court thus concluded: "This action is out of tune with the American spirit, and has no place in American jurisprudence." Ibid.
The above reasoning was essentially adopted by every other court which has faced this issue.[1]Albany & Meyer, 99 Cal. App. 651, 279 P. 213 (D.Ct.App. 1929); Johnson City v. Cowles Communications, Inc., 477 S.W.2d 750 (Tenn.Sup.Ct. 1972); State v. Time, Inc., 249 So.2d 328 (La. App. 1971); Capital Dist. Reg'l Off-Track Betting Corp. v. Northeastern Harness Horsemen's Ass'n, 92 Misc.2d 232, 399 N.Y.S.2d 597 (Sup.Ct. 1977).
Further support for the rejection of plaintiff's claim may be found in the landmark case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The Supreme Court there held that a public official may not recover damages for defamatory falsehoods relating to his official conduct unless *484 he can prove that such statements were made with actual malice. Although that suit did not include any claims in behalf of a governmental entity and thus did not involve the issue being examined here, the court nevertheless reiterated the general principles outlined in the cases previously cited, with particular attention given to Chicago v. Tribune Co., supra. As part of that review the court made the following observation:
... For good reason, "no court of last resort in this country has ever held, or even suggested, that prosecutions for libel in government have any place in the American system of jurisprudence." [376 U.S. at 291, 84 S.Ct. at 732]
Plaintiff seeks to distinguish the above-cited cases by suggesting that the principles outlined in Chicago v. Tribune, supra, and the opinions which followed should be confined to situations involving criticism of the financial policies of governmental entities.[2]Prosser, Torts (4 ed. 1971), § 111 at 746. Such a suggestion overlooks the strong public policy and constitutional reasoning upon which the opinions are based. Nor is there any reason in logic to insulate criticisms dealing with financial management and those directed to management in general. Even if this proposition were accepted, which it is not, such a view would provide little help to plaintiff here, since it is the school board's financial management which prompted the statements alleged to have been libelous.
Plaintiff next urges that the privilege should attach only when the criticism is directed at an "inefficient or corrupt government." Chicago v. Tribune Co., supra, 307 Ill. 595, 139 N.E. at 90. It is alleged that in the case at bar the defamation continued after defendants knew that plaintiff was not corrupt. This argument is also rejected by this court. All of the cases cited were decided on motions which required the defendants to admit the falsity and maliciousness of the challenged publications. The privilege involved is absolute and would have no *485 meaning if its application did not preclude examination into the bona fides of the criticism. See, generally, 50 Am.Jur.2d, Libel and Slander, § 199 at 705.
The final basis upon which plaintiff suggests that this court adopt a rule which would permit plaintiff to proceed is that our own State Constitution does not preclude such a claim. Citing N.J.Const. (1947), Art. I, par. 6, plaintiff notes that although that clause gives every person the right to speak freely, "write and publish his statements on all subjects," such a person is responsible for the abuse of that right. See, generally, State v. Hopson, 109 N.J. Super. 382, 389 (Law Div. 1970), aff'd 119 N.J. Super. 84 (App.Div. 1972). Although it is true that the New Jersey Constitution recognizes the responsibility which attaches to the right of free speech, such recognition does not militate against the public policy expressed by the case law previously cited. The right to criticize government has traditionally enjoyed a protection greater than that which exists in the dealings between one citizen and another. See, generally, Chicago v. Tribune Co., supra; Union Beach Bd. of Ed. v. N.J.E.A., 53 N.J. 29, 40 (1968). Indeed, Article I of our Constitution not only guarantees free speech but also gives special recognition to the right of the people to "make known their opinions to their representatives, and to petition for redress of grievance." N.J. Const. (1947), Art. I, par. 18. It is also important to note in this context that what is being insulated is criticism of government, not persons. Recognition of an absolute privilege for speech and writings directed at governmental entities does not mean that individual members of a governmental unit may not have a cause of action if defamed. The opposite is true. State v. Time, Inc., supra; Reilly v. Curtiss, 83 N.J.L. 77 (Sup.Ct. 1912).
It is the conclusion of the court, therefore, that the principles outlined in Chicago v. Tribune Co. and its successors are persuasive and should be adopted here. Subject to the limitations previously mentioned, the right to criticize government is entitled to an absolute privilege. Conversely, governmental entities, such as plaintiff here, should not have the right to maintain *486 actions for defamation in their own right. Such a result, while it denies the board of education the privilege of bringing this suit, does not affect the rights of its individual members. It is a fundamental principle of our American system that people have the right to criticize their government without fear of civil or criminal prosecution. The protection of that right by a privilege which is absolute goes beyond the recognition of the right of free speech, and necessarily so. To hold otherwise would create a chilling effect on the climate for public debate upon which a government of the people must depend.
Defendants' motion for summary judgment is hereby granted.
NOTES
[1] In addition to absolute privilege, the constitutional right of free speech as well as the fact that a governmental entity is not a "person" with a reputation subject to libel have also been cited as grounds for defeating such an action. 45 A.L.R.3d, supra at 1315.
[2] Plaintiff acknowledges that Johnson City v. Cowles Communications, Inc., supra, does not involve criticism of financial dealings, but suggests that it goes further than the other cases and should not be followed.