[L.A. No. 31448. June 1, 1982.]

CITY OF LONG BEACH, Plaintiff and Appellant, v.
RICHARD BOZEK, Defendant and Respondent.

528

**COUNSEL**

Robert W. Parkin, City Attorney, Robert E. Shannon, Senior Deputy City Attorney, and Thomas A. Vyse, Deputy City Attorney, for Plaintiff and Appellant.

William H. Sortor and Carroll, Burdick & McDonough as Amici Curiae on behalf of Plaintiff and Appellant.

Philip A. Zywiciel for Defendant and Respondent.

Ronald R. Talmo, Fred C. Okrand, Leonard Sacks, Robert E. Cartwright, William M. Shernoff, Sanford Gage, Victoria De Goff, Glen T. Bashore, Harvey R. Levine, Edward I. Pollock, Stephen I. Zetterberg, Arne Werchick, Ian Herzog and Wylie Aitken as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**MOSK, J.**—The sole issue is whether a city may maintain a malicious prosecution action against an individual who unsuccessfully sued the city for false imprisonment and related torts arising out of alleged police misconduct.[1] ■ We believe that existing remedies are adequate to protect the interests of municipalities in obtaining compensation for the expenses incurred in defending against unwarranted lawsuits and in deterring improper suits in the future. Additionally, the maintenance of malicious prosecution actions by governmental entities would generate a potentially chilling effect of considerable dimension upon the exercise of the right to petition the government through the courts for redress of grievances. Therefore, constitutional principles and tort principles combine to make the existence of a malicious prosecution action inappropriate in this context.

The facts are simply stated: Defendant Richard Bozek filed suit against the City of Long Beach and two city police officers for false imprisonment, false arrest, negligent hiring, assault, and battery. A jury found for the city and the two officers, who then instituted this action against Bozek for malicious prosecution. The complaint alleged that Bozek had brought the previous suit without probable cause and with knowledge that the allegations made in his complaint were false. Bozek generally demurred to the city's complaint, and the trial court sustained his demurrer without leave to amend only as to the city on the ground that municipalities should not be permitted to sue for malicious prosecution. The city appeals.[2]

■ "To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was

---

[1]The city has authority to bring an action within its general power to maintain tort actions against those who have injured it by their wrongful conduct. Government Code section 945 provides that "[a] public entity may sue and be sued." Moreover, article IV, section 4 of the City of Long Beach Charter delegates to the city "all ... powers and privileges ... which a municipal corporation might or could exercise under the Constitution of the State of California ...."

[2]Although the appeal was taken from the order sustaining the demurrer—a nonappealable order—we treat the notice of appeal as a premature but valid notice of appeal from the subsequently entered judgment of dismissal. (See Cal. Rules of Court, rule 2(c); *Flowers & Sons Development Corp.* v. *Municipal Court* (1978) 86 Cal.App.3d 818, 822, fn. 1 [150 Cal.Rptr. 555]; *Marcotte* v. *Municipal Court* (1976) 64 Cal.App. 3d 235, 239 [134 Cal.Rptr. 314].)

pursued to a legal termination in his, plaintiff's favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) In *Bertero*, we succinctly stated the policy considerations underlying the tort of malicious prosecution: "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees [citations], ... and [damages] for mental or emotional distress [citation]." (*Id.* at pp. 50-51.)

Our repeated references in *Bertero* to the types of harm suffered by an "individual" who is forced to defend against a baseline suit do not indicate, as Bozek suggests, that a malicious prosecution action can be brought only by an individual. On the contrary, there are valid policies which would be furthered by allowing nonindividuals to sue for malicious prosecution. Admittedly, a governmental entity's interest in protecting its reputation is minimal, and it is not capable of suffering emotional distress. The city here did not, however, institute the present action to obtain recovery for harm to reputation or for emotional distress. Rather, it sought only to obtain reimbursement for expenses incurred in defending against the previous suit but which it could not recover as costs.[3] From the time we first recognized that a tort action for malicious prosecution would lie for wrongful institution of civil proceedings, it has been clear that compensation for expenses of defending a suit is persuasive justification for permitting a malicious prosecution action to proceed. (See *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 126-127 [4 P. 1106].) In addition to a plaintiff's interest in recovering all its expenses of suit, the courts and the public have a significant interest in promoting the efficient administration of justice by discouraging baseless lawsuits. We thus decline to formulate a general rule allowing malicious prosecution actions only for individual plaintiffs.

---

[3]The city's complaint included a prayer for punitive damages. It is not clear, however, whether the punitive damages were sought on behalf of the city or on behalf of the

■ Nevertheless, significant countervailing factors militate against allowing governmental entities to sue for malicious prosecution. Foremost among these is the constitutionally guaranteed right to petition the government for the redress of legitimate grievances. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 3.) The right of petition, like the other rights contained in the First Amendment and in the California constitutional Declaration of Rights, is accorded "a paramount and preferred place in our democratic system." (*American Civil Liberties Union* v. *Board of Education* (1961) 55 Cal.2d 167, 178 [10 Cal.Rptr. 647, 359 P.2d 45, 94 A.L.R.2d 1259], cert. den., 368 U.S. 819 [7 L.Ed.2d 25, 82 S.Ct. 34].) The Supreme Court has stated that "the rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press." (*Mine Workers* v. *Illinois Bar Assn.* (1967) 389 U.S. 217, 222 [19 L.Ed.2d 426, 430, 88 S.Ct. 353]; see also *Thomas* v. *Collins* (1945) 323 U.S. 516, 530 [89 L.Ed. 430, 440, 65 S.Ct. 315]; *De Jonge* v. *Oregon* (1937) 299 U.S. 353, 364 [81 L.Ed. 278, 283, 57 S.Ct. 255].)

When attempting to determine whether Bozek's act of filing suit against the city was an exercise of the right of petition, it is helpful to examine cases defining the scope and meaning of the right of petition in other contexts. In a line of cases interpreting federal antitrust laws, the Supreme Court has held that the right of petition protects the freedom to seek redress from all three of the coordinate branches of government. In *Eastern R. Conf.* v. *Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523], the court declared that the provisions of the Sherman Act could not be used to impose civil sanctions for a publicity campaign aimed at influencing the Legislature, even if the campaign was designed to stifle competition from the trucking industry. The court stated: "The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so." (*Id.*, at p. 139 [5 L.Ed.2d at p. 472].) In *Mine Workers* v. *Pennington* (1965) 381 U.S. 657, 669-672 [14 L.Ed.2d 626, 635-637, 85 S.Ct. 1585] the court held that concerted efforts to influence the conduct of

---

police officers. In oral argument before the Court of Appeal and before this court, counsel for the city stated that city was seeking only the expenses it incurred in defending the first action, not punitive damages. In view of our holding that the city has no cause of action and counsel's apparent waiver of the issue, we need not decide whether punitive damages are ever available to cities.

executive officials are similarly privileged, regardless of whether those efforts are undertaken with an anticompetitive—i.e., improper—purpose. In a third case, the court ruled that the right of petition encompasses attempts to obtain redress through the institution of administrative and judicial proceedings, as well as through political means. The court declared: "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is but one aspect of the right of petition." (*California Transport* v. *Trucking Unlimited* (1972) 404 U.S. 508, 510 [30 L.Ed.2d 642, 646, 92 S.Ct. 609].)

Other courts, analogizing to the *Noerr-Pennington* doctrine, have created privileges from civil liability for actions constituting the exercise of the right of petition. Two cases dealt with federal statutory causes of action. (*First Nat. Bank of Omaha* v. *Marquette Nat., etc.* (8th Cir. 1980) 636 F.2d 195, 199, fn. 4, cert. den., 450 U.S. 1042 [68 L.Ed.2d 240, 101 S.Ct. 1761]; *Stern* v. *United States Gypsum, Inc.* (7th Cir. 1977) 547 F.2d 1329, 1342-1346, cert. den., 434 U.S. 975 [54 L.Ed.2d 467, 98 S.Ct. 533].) Other cases have barred suit for the tort of interference with economic relations. (*Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128, 135-138 [161 Cal.Rptr. 532] [public comment on the transfer of a business license by an administrative agency]; *State of Mo.* v. *Nat. Organization for Women* (8th Cir. 1980) 620 F.2d 1301, 1316-1319, cert. den., 449 U.S. 842 [66 L.Ed.2d 49, 101 S.Ct. 122] [public activities directed toward influencing state legislatures to ratify the Equal Rights Amendment]; *Sierra Club* v. *Butz* (N.D. Cal. 1972) 349 F.Supp. 934 [institution of a lawsuit in an attempt to persuade the Forest Service to alter its timber sale policies].)

A different series of cases invoked the right of petition and the right to assemble peaceably in order to ensure that members of private organizations were able to freely take collective action to obtain legal representation and thus access to the courts. (See *United Transportation Union* v. *Michigan Bar* (1971) 401 U.S. 576 [28 L.Ed.2d 339, 91 S.Ct. 1076]; *Mine Workers* v. *Illinois Bar Assn., supra*, 389 U.S. 217; *Railroad Trainmen* v. *Virginia Bar* (1964) 377 U.S. 1 [12 L.Ed.2d 89, 84 S.Ct. 1113, 11 A.L.R.3d 1196]; *N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415 [9 L.Ed.2d 405, 83 S.Ct. 328].)

These authorities make it clear that the right of petition protects attempts to obtain redress through the institution of judicial proceedings as well as through importuning executive officials and the

Legislature.[4] It is equally apparent that the right encompasses the act of filing a lawsuit solely to obtain monetary compensation for individualized wrongs, as well as filing suit to draw attention to issues of broader public interest or political significance. As the Supreme Court declared in *Mine Workers* v. *Illinois Bar Assn., supra*, 389 U.S. 217, 223 [19 L.Ed.2d 426, 431], "[T]he First Amendment does not protect speech and assembly only to the extent it can be characterized as political." (See also *Thomas* v. *Collins, supra*, 323 U.S. 516, 531 [89 L.Ed. 430, 440].) ▇ Hence, the act of filing suit against a governmental entity represents an exercise of the right of petition and thus invokes constitutional protection.

Having decided that Bozek's suit for damages against the city is a protected exercise of the right of petition, we must next determine what level of constitutional protection is appropriate. The issue is whether the bringing of such an action should be absolutely privileged, or protected only to the extent that it is not done with "actual malice"; i.e., with knowledge of the falsity of the allegations made in the complaint or with reckless disregard for their truth or falsity. (See generally *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706-707, 84 S.Ct. 710, 95 A.L.R.2d 1412].)

Numerous cases have held that the right of free speech prevents the government from suing for defamation, i.e., criticism of the government is absolutely privileged.[5] (*Johnson City* v. *Cowles Communications, Inc.*

---

[4]The legislative history of California Constitution article I, section 3, reveals an intent to make the California provision at least as broad as the First Amendment right of petition. Article I, section 10 of the California Constitution, originally enacted in 1849, stated: "The people shall have the right to freely assemble together to consult for the common good, to instruct their representatives, and to petition *the Legislature* for redress of grievances." (Italics added.) On November 5, 1974, the voters of this state adopted the following amended and renumbered provision: "The people have the right to instruct their representatives, petition *government* for redress of grievances, and assemble freely to consult for the common good." (Italics added.) (Cal. Const., art. I, § 3.) The amendment was clearly intended to broaden the right of petition to make it extend to petitions to all branches of government, not merely to the Legislature. (See Proposed Revision of the California Constitution, Articles I, XX, XXII, 5 Cal. Const. Revision Com. Rep. (1971) p. 23.)

[5]By statute in California, defamatory statements made in the course of a judicial proceeding are absolutely privileged. (Civ. Code, § 47, subd. 2.) Bozek argues that we should recognize an analogous privilege on these facts. Cases have extended the protection of section 47, subdivision 2, to the communication of an informer to the Internal Revenue Service concerning an instance of possible tax fraud (*Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918, 924-927 [148 Cal.Rptr. 242]) and to complaints of police misconduct lodged with a police department (*Imig.* v. *Ferrar* (1977) 70 Cal. App.3d 48, 54-57 [138 Cal.Rptr. 540]; cf. *Pena* v. *Municipal Court* (1979) 96 Cal.

(Tenn. 1972) 477 S.W.2d 750, 753; *State* v. *Time, Inc.* (La. App. 1971) 249 So.2d 328, 329-333; *City of Albany* v. *Meyer* (1929) 99 Cal.App. 651 [279 P. 213]; *City of Chicago* v. *Tribune Co.* (1923) 307 Ill. 595 [139 N.E. 86, 28 A.L.R. 368] [quoted with approval in *New York Times Co.* v. *Sullivan, supra*, 376 U.S. 254, 291, 299 (11 L.Ed.2d 686, 713, 719)].) The policy supporting an absolute privilege for criticism of the government is to allow the free communication of ideas, a concept at the core of First Amendment liberties. If the courts were to condone the imposition of civil sanctions, even if only for statements purportedly made with actual malice, a severe chilling effect would result on the legitimate exercise of the right to express beliefs freely when those beliefs appear to be derogatory of the governing authorities.

The right of petition is of parallel importance to the right of free speech and the other overlapping, cognate rights contained in the First Amendment and in equivalent provisions of the California Constitution. Although it has seldom been independently analyzed, it does contain an inherent meaning and scope distinct from the right of free speech. It is essential to protect the ability of those who perceive themselves to be aggrieved by the activities of governmental authorities to seek redress through all the channels of government. A tort action against a municipality is but one of the available means of seeking redress. If cities are permitted to bring malicious prosecution actions against those who have unsuccessfully sued them, the institution of legitimate as well as baseless legal claims will be discouraged. The elements of malicious prosecution, though difficult to prove, are easily alleged. (*Stern* v. *United States Gypsum, Inc., supra*, 547 F.2d 1329, 1345; *Sierra Club* v. *Butz, supra*, 349 F.Supp. 934, 938.) Allowing cities to sue for malicious prosecution against unsuccessful former plaintiffs would provide the municipalities with a sharp tool for retaliation against those who pursue legal actions against them. Indeed, it is not unlikely that even good faith claimants would forego suit in order to avoid the possibility

---

App.3d 77 [157 Cal.Rptr. 584]). However, we made it plain in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405], that section 47, subdivision 2 does not prevent all suits for malicious prosecution: "[T]he fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent it being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." The *Albertson* court did not consider the possible limiting effect of the right of petition on the availability of an action for malicious prosecution; that case involved an action between two private parties.

of having to defend against a subsequent malicious prosecution action should their action against the city prove unsuccessful.

In the only prior case to directly face the issue whether the right of petition bars malicious prosecution actions by municipalities, an Ohio court held that a local board of education was precluded from bringing an action for malicious prosecution against a taxpayer who had previously sued unsuccessfully to prevent a sale of bonds by the board. (*Board of Ed. of Miami Trace Local Sch. Dist. v. Marting* (1966) 7 Ohio Misc. 64 [36 Ohio Ops.2d 134, 217 N.E.2d 712].)[6] The *Marting* court relied in part on decisions prohibiting defamation suits by governmental entities, noting by way of analogy the chilling effect which would result on the exercise of the right of petition were such suits allowed to proceed to trial. The court declared: "Permitting a Board to sue a taxpayer, who is denied judicial relief in a prior case, for malicious prosecution, in an unlimited amount can only result in self-censorship. Potential critics of official conduct would be foreclosed from bringing suit because of doubt that they would be permitted to, or could prove the facts, or for fear of the expense for having failed to do so. Any judicial construction or statutory provision prohibiting or unduly restricting this right would contravene the First and Fourteenth Amendments to the Federal Constitution, [citations]." (*Id.*, at p. 717.)

The analogy to libel cases is apt. The right of petition, like the right of free speech, is "of the essence of [a person's] guaranteed personal liberty." (*DeJonge v. Oregon, supra*, 299 U.S. 353, 366 [81 L.Ed. 278, 284].) Like the right of free speech, it should be scrupulously protected. We thus accord substantial weight to the need to protect the right of petition as a factor counterbalancing the tort policies which favor recognition of the city's cause of action.

There are significant additional reasons for not permitting the city's action to proceed. The municipality seeks only to obtain reimbursement for its nonrecoverable costs of defending Bozek's prior suit, the primary element of which is the reasonable value of the services of its attorneys.[7]

---

[6]One California case held that a liquor licensee could not maintain an action for malicious prosecution against competitors who opposed the transfer of his license by a state administrative agency. (*Matossian v. Fahmie, supra*, 101 Cal.App.3d 128, 135-138.) The court relied upon the right of petition and the policy behind statutory provisions expressly granting a right to protest the proposed administrative action.

[7]The city indicated in oral argument that, were it allowed to proceed with its cause of action, it might seek other items of expenses, e.g., such nebulous items as the costs of paying city employees for their time spent in taking depositions, consulting with the city's attorneys, and otherwise preparing for trial.

Ordinarily, the party who employs an attorney is responsible for paying his fees. "[A]ttorney's fees are not recoverable from the opposing party in the absence of an express statutory provision or a contractual agreement that they be paid." (*Reid* v. *Valley Restaurants, Inc.* (1957) 48 Cal.2d 606, 610 [311 P.2d 473]; Code Civ. Proc., § 1021.) In *Baugess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942], we held that trial courts did not have the inherent equitable power to award attorneys fees even as a sanction for conduct which generates unwarranted litigation. (See also *Young* v. *Redman* (1976) 55 Cal.App.3d 827, 834-839 [128 Cal.Rptr. 86].)

However, the Legislature, in two very recent enactments, has greatly expanded the powers of trial courts to award attorneys fees for the purpose of discouraging frivolous litigation. New Code of Civil Procedure section 128.5, subdivision (a) provides: "Every trial court shall have the power to order a party or the party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay." (Added by Stats. 1981, ch. 762, § 1, p. —.) The Legislature clearly expressed an intent to broaden the power of trial courts to award monetary sanctions; it specifically referred to the *Baugess* decision.[8]

In a separate enactment, the Legislature added Code of Civil Procedure section 1021.7, which provides: "In any action for damages arising out of the performance of a peace officer's duties, brought against a peace officer, . . . or against a public entity employing a peace officer . . ., the court may, in its discretion, award reasonable attorney's fees to the defendant or defendants as part of the costs, upon a finding by the court that the action was not filed or maintained in good faith and with reasonable cause." (Added by Stats. 1981, ch. 980, § 1, p. —.)

These new measures seriously undercut the city's most persuasive argument, i.e., that we must allow malicious prosecution actions to go

---

[8]The Legislature stated: "It is the intent of this legislation to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in *Baugess* v. *Paine* (1978), 22 Cal.3d 626." (Stats. 1981, ch. 762, § 2, p. —.)

forward in order to compensate municipalities for expenses incurred in defending against baseless suits and in order to deter the proliferation of such suits. From a constitutional standpoint, an award of expenses upon a finding that monetary sanctions are appropriate under the standards set out in the above statutes is a clearly preferable remedy to an independent action for malicious prosecution with its cost in terms of additional attorneys' fees and imposition upon judicial resources. It is not uncommon for a party suing for torts arising out of official misconduct to be represented by an attorney retained under a contingency fee arrangement. Such a party will not be required to retain new counsel to oppose in that same proceeding a motion for statutory sanctions. In contrast, an unsuccessful plaintiff who is subsequently sued for malicious prosecution would in all probability be required to hire new counsel to defend the second suit, potentially incurring considerable expense before obtaining a resolution of the issue whether the initial action was brought with malicious intent.

In order to avoid the chilling effect upon the constitutional right of petition which would result if we were to allow municipalities to maintain actions for malicious prosecution, we conclude the best course is to defer to the legislatively provided remedy. An award of the expenses of suit by a trial court in an initial action will fully compensate a municipality for its expenses of defending suit. The availabilty of such an award, in combination with the criminal sanctions provided in Penal Code section 72 for the filing of false claims with the government and the possibility of malicious prosecution actions by individual city employees—here the police officers—provide an adequate deterrent to unwarranted lawsuits without unduly infringing upon the right of petition.[9]

Accordingly, we hold that governmental entities may not maintain actions for malicious prosecution against those who have previously

[9]Because the trial judge sustained Bozek's demurrer only with respect to the city, our holding is inapplicable to malicious prosecution suits brought by police officers as individuals and through their private—not publicly employed—counsel. We note, however, that such suits are different from suits by governmental entities themselves in at least two important ways: First, police officers have an interest in recovering damages for harm to their reputations and for emotional distress caused by lawsuits alleging improper conduct on their part. Second, suits by police officers do not necessarily raise the specter of a retaliatory policy designed to discourage legitimate exercise of the right of petition through the courts. Although this case does not present the issue, it is conceivable that suits by individual police officers might require that a different balance be struck between the right of petition and the tort policies underlying the malicious prosecution cause of action.

sued such entities without success; the bringing of suits against the government is absolutely privileged and cannot form the basis for imposition of civil liability for malicious prosecution.

The judgment is affirmed.

Bird, C. J., Newman, J., and Broussard, J., concurred.

**KAUS, J.**—I dissent.

The majority acknowledges that the principal purposes underlying a malicious prosecution action—(1) deterring the filing of malicious and baseless lawsuits and (2) affording the victim of such a suit recovery for expenses incurred in defending the action—fully support the city's right to bring such an action. Nonetheless, it rejects the city's claim on the startling theory that the constitutional right of petition encompasses a right to sue a governmental entity *maliciously and without probable cause* with total impunity—i.e., that such a malicious and unfounded lawsuit is "absolutely privileged." With all respect, the majority's novel constitutional thesis is riddled with fundamental and fatal flaws.

First, and somewhat paradoxically, the majority's constitutional analysis rests on an improperly *narrow* conception of the scope of the constitutional right of petition, implicitly assuming that while defendant Bozek's initial lawsuit against the city represented an exercise of that right which must not be "chilled," an ordinary lawsuit between two private parties is not similarly protected by the right of petition. (See *ante*, p. 534, fn. 5.) This distinction is necessary to the majority's conclusion that the right of petition bars a malicious prosecution action *by a governmental entity*, but does not bar such an action by a private party.

The main problem with the suggested distinction, however, is that it is directly refuted by the very United States Supreme Court cases on which the majority relies to demonstrate that bringing a lawsuit—i.e., petitioning the judicial branch of government for redress of grievances —falls within the right of petition. (See, e.g., *California Transport* v. *Trucking Unlimited* (1972) 404 U.S. 508, 510 [30 L.Ed.2d 642, 646, 92 S.Ct. 609]; *United Transportation Union* v. *Michigan Bar* (1971) 401 U.S. 576, 578-579 [28 L.Ed.2d 339, 342-343, 91 S.Ct. 1076]; *Mine Workers* v. *Illinois Bar Assn.* (1967) 389 U.S. 217, 222-223 [19 L.Ed.2d 426, 430-431, 88 S.Ct. 353]; *Railroad Trainmen* v. *Virginia Bar* (1964) 377 U.S. 1 [12 L.Ed.2d 89, 84 S.Ct. 1113, 11 A.L.R.3d

1196]; *NAACP* v. *Button* (1963) 371 U.S. 415 [9 L.Ed.2d 405, 83 S.Ct. 828].) With the exception of *NAACP* v. *Button*, the right of petition involved in *all* of these cases was the right of one private party *to bring suit against another private party*; in other words, these cases clearly hold that the right of petition encompasses the right of an individual to petition the government for redress of grievances against another private person, as well as the right to petition for redress of grievances against the government itself. (See, e.g., *Mine Workers, supra*, 389 U.S. 217, 223 [19 L.Ed.2d 426, 431]; *Railroad Trainmen, supra*, 377 U.S. 1, 5-7 [12 L.Ed.2d 89, 92-93].)

Once it is recognized that the right of petition embraces purely private lawsuits as well as actions against the government, it becomes apparent that the majority's absolutist view of the right of petition obviously proves too much: if the simple fact that one has a constitutional right to bring a lawsuit immunizes an individual from tort liability for maliciously abusing that right, then *all malicious prosecution actions* would be unconstitutional, not only those actions brought by a governmental entity. Of course, decisions of both the United States Supreme Court and our own court have uniformly upheld the validity of traditional, common law malicious prosecution actions, recognizing that the "[p]olicy of encouraging free access to the courts ... is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied. [Citations.]" (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405]; see, e.g., *Wheeler* v. *Nesbitt* (1860) 65 U.S. (24 How.) 544, 549-551 [16 L.Ed. 765, 768-769]; *Stewart* v. *Sonneborn* (1879) 98 U.S. 187, 192 [25 L.Ed. 116, 118].) These cases belie the majority's absolutist approach.

Furthermore, even if we confine our view to grievances or claims pursued by a private individual against the government itself, it remains clear that the majority's sweeping constitutional pronouncement—"the bringing of suits against the government is absolutely privileged" (*ante*, p. 538)—simply bears no relation to reality. If the majority's thesis were sound—and if, as the majority suggests, Bozek's initial lawsuit against the city were truly analogous to libelous speech criticizing the government (see *ante*, pp. 534-536)—it would necessarily follow that an individual who has knowingly filed a false claim against the government could not constitutionally be subjected to any penalty or required to bear any monetary burden for the harm he has caused.

That, however, is not now and never has been the case. For more than a century, Penal Code section 72 has imposed a criminal sanction *of up to five years imprisonment* and a $10,000 fine on any individual who, with intent to defraud, presents a false or fraudulent claim to a state or local official.[1] In similar fashion, numerous other statutes at both the state and federal level provide comparable criminal penalties for false or fraudulent representations made to a public entity in connection with monetary claims. (See, e.g., Welf. & Inst. Code, § 11483; 18 U.S.C. §§ 286-289.) The prospect of a multiyear prison term obviously has a greater chilling effect on the filing of a claim or lawsuit than the availability of a malicious prosecution action, yet the majority cites no case, and I have found none, which intimates that the imposition of even such serious criminal sanctions on individuals who abuse the right of petition by filing false claims runs afoul of constitutional strictures. These penal statutes totally refute the majority's suggestion that filing a false claim for damages from the government is constitutionally equivalent to delivering a false speech against the government.[2]

Although the city's complaint in this case does allege, inter alia, that Bozek "knew that the allegations contained in [his] complaint were false," the city is not, of course, asking that Bozek be locked up for several years. Instead, it is only seeking to recover the cost of attorney fees which it incurred in defending Bozek's allegedly malicious lawsuit, a traditional element of damages in a malicious prosecution action. (See *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 126-127 [4 P. 1106].) I must confess that I find it difficult to understand how the majority can conclude that it would be *unconstitutional* to permit the city to recover such attorney fees in this setting, particularly in light of the long line of United States Supreme Court decisions which have recognized that although under the "American Rule" attorney fees are not normally recoverable as an element of costs unless statutorily authorized, such fees may be awarded—even in the absence of statute—against a party who is found to have litigated "in bad faith, vexatiously, wantonly, or for oppressive reasons, . . ." (*F. D. Rich Co.* v. *Industrial Lumber Co.* (1974) 417 U.S. 116, 129 [40 L.Ed.2d 703, 713, 94 S.Ct. 2157]; see, e.g., *Roadway Express, Inc.* v. *Piper* (1980) 447 U.S. 752, 765-766 [65

---

[1]In 1976, the maximum penalty for violation of section 72 was reduced to one year.

[2]Like the majority opinion, the case of *Board of Ed. of Miami Trace Local Sch. Dist.* v. *Marting* (1966) 7 Ohio Misc. 64 [36 Ohio Ops.2d 134, 217 N.E.2d 712, 717], rests in part on this erroneous analogy between a malicious lawsuit against the government and a libelous speech against the government.

L.Ed.2d 488, 500-501, 100 S.Ct. 2455]; *Alyeska Pipeline Co. v. Wilderness Society* (1975) 421 U.S. 240, 258-259 [44 L.Ed.2d 141, 153-154, 95 S.Ct. 1612].)[3] Numerous federal cases have indicated that under this "bad faith" doctrine government defendants may recover attorney fees against private parties who have maliciously pursued civil actions against them. (See, e.g., *Gage v. Wexler* (N.D.Cal. 1979) 82 F.R.D. 717, 719-720; *Abney v. Ward* (S.D.N.Y. 1977) 440 F.Supp. 1129, 1131-1132; *Blackburn v. City of Columbus, Ohio* (S.D.Ohio 1973) 60 F.R.D. 197, 198-199; cf. *Acevedo v. Immigration and Naturalization Service* (2d Cir. 1976) 538 F.2d 918, 920-921.) The majority's constitutional conclusion flies in the face of these authorities.[4]

Indeed, the majority opinion itself—through an apparently unrecognized inconsistency—in effect acknowledges the weakness of its own logic. If the majority's "absolute privilege" analysis were valid, any statute which *expressly* purports to authorize a government defendant to obtain attorney fees from a plaintiff who has sued it—even maliciously and without probable cause—would obviously be unconstitutional. As the majority is aware, only last year the California Legislature passed just such a statute—section 1021.7 of the Code of Civil Procedure —permitting a court to award attorney fees to a defendant public entity "[i]n any action for damages arising out of the performance of a peace officer's duties ... upon a finding by the court that the action was not filed or maintained in good faith and with reasonable cause." (Stats.

---

[3]In 1981, the California Legislature essentially codified the "bad faith" doctrine in section 128.5 of the Code of Civil Procedure. (Stats. 1981, ch. 762, § 1.) Section 128.5 provides in relevant part: "Every trial court shall have the power to order a party or the party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith."

[4]In fact, the relevant decisions demonstrate that *even in the absence of bad faith*, there is nothing unconstitutional in requiring a losing plaintiff to pay attorney fees to a prevailing government defendant under a generally applicable attorney fee statute. (See, e.g., *Gage v. Wexler, supra*, 82 F.R.D. 717, 718-719 (applying standard enunciated in *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 421-422 [54 L.Ed.2d 648, 656-657, 98 S.Ct. 694]); *Anthony v. Marion County General Hospital* (5th Cir. 1980) 617 F.2d 1164, 1169-1170; *Lujan v. State of N.M. Health & Soc. Serv.* (10th Cir. 1980) 624 F.2d 968, 970; *Lopez v. Aransas Cty. Independent Sch. Dist.* (5th Cir. 1978) 570 F.2d 541, 545.) The majority's "absolute privilege" analysis, of course, is not only totally inconsistent with these precedents, but in addition would logically preclude a court from even awarding *ordinary costs* against an unsuccessful plaintiff in any lawsuit against a public entity. The majority cites no constitutional authority which even remotely supports such a result.

1981, ch. 980, § 1.)[5] Rather than adhere to its basic constitutional approach and strike down section 1021.7, the majority inexplicably embraces the statute, claiming that it somehow supports its conclusion! While I, of course, believe that the new statute is constitutional, I cannot understand how the majority can square its approval of the statute with the principal holding of its opinion.[6]

One thing seems clear from the enactment in 1981 of both section 1021.7 and section 128.5, the more general "bad faith" attorney fee provision noted above (see fn. 3, *ante*): at this time, the Legislature obviously sees the malicious filing and maintenance of unfounded lawsuits as a serious problem for the administration of justice in California, a problem which extends to malicious suits against public entities as well as to actions against private parties. Nothing in either of the new statutes, of course, purports to eliminate the preexisting common law remedy against baseless litigation afforded by the malicious prosecution tort; the Legislature has simply supplemented that traditional remedy with a more efficient method of assessing attorney fees in the initial maliciously prosecuted action itself. (See generally Note, *Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis* (1979) 88 Yale L.J. 1218, 1237; Note, *Liability for Proceeding With Unfounded Litigation* (1980) 33 Vand.L.Rev. 743, 771-773.) Although the new legislation may well help to minimize the adverse effect of this misconceived decision *in the future*, the majority cannot legitimately claim that it is effectuating the Legislature's will by denying the city the right to pursue a traditional malicious prosecution action in this case.

---

[5]Section 1021.7 provides in relevant part: "In any action for damages arising out of the performance of a peace officer's duties, brought against a peace officer ... or against a public entity employing a peace officer ... the court may, in its discretion, award reasonable attorney's fees to the defendant or defendants as part of the costs, upon a finding by the court that the action was not filed or maintained in good faith and with reasonable cause."

[6]The majority attempts to distinguish section 1021.7 from a malicious prosecution action by suggesting that a malicious prosecution action places more of a burden on the original plaintiff than the new statute because it may require him to hire another attorney to defend the second action. By the same token, however, a separate malicious prosecution action is also a less expeditious and more expensive route for an aggrieved defendant to pursue, and it seems quite likely that the Legislature enacted the new provision for the very purpose of making it easier to obtain attorney fees against a malicious plaintiff by permitting recovery in the initial action. Thus, if the threat of additional attorney fee expenses impermissibly chills the right of petition, as the majority maintains, section 1021.7 would appear at least as vulnerable to constitutional challenge as the malicious prosecution action under consideration here.

Because I can find no justification—constitutional or otherwise—for rejecting the city's action, I would reverse the judgment.

Richardson, J., concurred.