[Civ. No. 45874. Second Dist., Div. One. Feb. 26, 1976.]

EDWARD D. YOUNG, JR.,
Plaintiff, Cross-defendant and Respondent, v.
MARSHALL REDMAN,
Defendant, Cross-complainant and Appellant;
THOMAS J. GIBBONS, JR.,
Intervener, Cross-complainant and Respondent;
LOUIS KLOOSTERMAN,
Cross-complainant and Respondent.

COUNSEL

Kallman & Levenberg and Paul Kallman for Defendant, Cross-complainant and Appellant.

Allan F. Grossman for Plaintiff, Cross-defendant and Respondent.

Kleinberg, Laver, Morganstern, Katz & Jacobs and Arthur S. Katz for Cross-complainant and Respondent.

Branch & Torley and Edwin B. Branch for Intervener, Cross-complainant and Respondent.

OPINION

HANSON, J.—Defendant, cross-complainant and cross-defendant Marshall Redman (hereinafter Redman) appeals from a judgment for money damages in favor of plaintiff, cross-defendant and respondent Edward D. Young, Jr. (hereinafter Young) for breach of contract to purchase real property and in favor of cross-complainants and respondents Louis Kloosterman (hereinafter Kloosterman) and Thomas J. Gibbons, Jr. (hereinafter Gibbons) for broker commissions. Defendant Redman also appeals from the trial court's awarding $1,000 to each of the above respondents as sanctions.

THE CASE

On March 18, 1970, Redman entered into a contract to purchase from Young a tract of land located in Kern County consisting of 153 acres for $107,100 or $700 per acre.

On May 20, 1971, before the escrow had closed, Redman sent Young a notice of rescission alleging that his (Redman's) consent in entering into the contract had been obtained as a result of mistake and misrepresentation as to the topography of the land. Young filed this action against Redman for breach of contract, and against Wilshire Escrow Company for deposit into court of the $6,500 down payment made by Redman toward the purchase. Redman answered and filed a cross-complaint against Young and Kloosterman, the soliciting real estate broker, for fraud, negligent misrepresentation and mistake. Kloosterman and Gib-

bons, the listing real estate broker, filed cross-complaints against Young for commissions allegedly due on the sale.

On March 5, 1974, Redman was notified of the trial date set for May 28, 1974. On May 13, 1974, his attorney served the parties with a notice of motion for continuance of the trial date until after June 6, 1974, on the grounds that Redman "was out of the country on business." The motion was denied. Prior to trial Young served a "Notice in Lieu of Service of Subpoena" (Code Civ. Proc., § 1987), requesting Redman's attendance at trial.

On May 29, 1974, the trial commenced in the absence of Redman, and lasted three days. Prior to closing arguments, Redman's attorney again requested a continuance, which was denied. By stipulation Redman's deposition was then entered into evidence. Judgment was entered in favor of Young for the sum of $45,780, the alleged difference between the contract price and the value of the land at the time of the breach on May 20, 1971. Kloosterman and Gibbons were awarded $5,355 each, as commissions due on the sale. The court below also awarded $1,000 each to Young, Kloosterman and Gibbons as sanctions "by virtue of defendant REDMAN's failure to appear and completely unmeritorious cross-complaints and defenses" and "for defendant REDMAN's vexations and oppressive conduct in maintaining, in bad faith, his unfounded defenses and cross-actions."

## ISSUES

On appeal defendant and cross-defendant Redman contends (1) that the failure to grant him a continuance constituted an abuse of the trial court's discretion; (2) that the damages were excessive because there was no substantial evidence to support the trial court's finding that the value of the land at the time of breach was $400 per acre; and (3) that the trial court had no power to award sanctions to respondents, and that even if it did, the award was excessive.

## DISCUSSION

### I

*Did the Trial Court Abuse Its Discretion in Denying Redman's Motions for a Continuance of the Trial?*

The denial of a motion for continuance for absence of a party may constitute an abuse of discretion by the trial court sufficient to justify reversal only where there is an affirmative showing of "good cause," such as serious illness or unforeseen circumstances which prevented a party from appearing at trial. (See, e.g. *Betts Spring Co.* v. *Jardine Mach. Co.,* 23 Cal.App. 705 [139 P. 657] (defendant seriously ill and sent to Europe by his physician); *Jaffe* v. *Lilienthal,* 101 Cal. 175 [35 P. 636] (plaintiff seriously ill in Seattle); *Morehouse* v. *Morehouse,* 136 Cal. 332 [68 P. 976] (defendant had suffered serious injuries in an accident); *Pacific Gas etc. Co.* v. *Taylor,* 52 Cal.App. 307 [198 P. 651] (defendant seriously ill in Boston).

There is, however, no such showing in the case at bench, and the mere absence of a party standing alone is insufficient to compel a court to grant a continuance. Even the alleged illness and inability of the defendants to attend the trial has been held insufficient grounds for reversal where the trial court denied a request for a continuance in the absence of supporting affidavits. (*Nahas* v. *Nahhas,* 135 Cal.App.2d 440 [287 P.2d 381].) Code of Civil Procedure section 594 provides that a trial may be held in the absence of the adverse party "unless the court, for good cause, otherwise directs."

Clearly there is no abuse of discretion by the trial court in denying continuance where a party has adequate notice of the trial date and an opportunity to be present at the trial but fails to adjust personal plans in order to attend. (For instance, in *Canty* v. *Pierce & Anderson,* 173 Cal. 205 [159 P. 582], the plaintiff went to his ranch to supervise repairs on some broken machinery; in *McGuire* v. *Drew,* 83 Cal. 225 [23 P. 312], defendant was absent in order to supervise the canvassing of returns in an election in which he was a candidate; in *Stuckman* v. *Woodhull,* 170 Cal.App.2d 424 [338 P.2d 934], plaintiff was on vacation; and in *People ex rel. Dept. Pub. Wks.* v. *Busick,* 259 Cal.App.2d 744 [66 Cal.Rptr. 532], the parties were attending to other personal business.)

Due to the problem of court congestion and delay in bringing civil cases to trial, the Judicial Council of California, following recommendations of a workshop conducted by judges and court administrators, in 1971 adopted new Standards of Judicial Administration for the Superior Courts (effective January 1, 1972, amended in 1974). Sections 9 and 10 thereof provide in relevant part that in order to insure prompt disposition of civil cases these standards state that *the superior court should not grant a continuance except in emergencies*; that continuances

should be granted *only upon an affirmative showing of good cause*; and that, *in general, the necessity for the continuance should have resulted from an emergency occurring after the trial setting conference that could not have been anticipated or avoided with reasonable diligence and cannot now be properly provided for other than by a continuance.* These standards prescribe that matters which, under normal circumstances, would be considered good cause for granting the continuance of a trial date include the death of an attorney or material witness; illness of the trial attorney, a material witness or a party, supported by an appropriate declaration of a medical doctor, stating the nature of the illness and the anticipated period of any incapacity; or the unavailability of a witness only where his absence is due to an unavoidable emergency. (See 4 Witkin, Cal. Procedure (2d ed. 1975 Supp.) Trial, § 30A, pp. 32-36.)

In the instant case, the only reason for Redman's absence was that he was "out of the country on May 28, 1974, and will not return to this country until on or about June 6, 1974." Since he made no showing of an emergency requiring his absence from the country, it must be presumed that his failure to appear was voluntary rather than necessary. In the present case, even in the unavoidable absence of the defendant, the court in the exercise of its sound discretion might have denied a continuance since Redman's testimony was adequately preserved in a deposition which was entered into evidence by stipulation of the parties. (See *Hansen v. Bernstein,* 110 Cal.App.2d 170, 173-175 [242 P.2d 368].)

Accordingly, we conclude that defendant Redman did not show "good cause" for a continuance and the trial court's denial of the motion did not constitute an abuse of its discretion.

II

*Was There Substantial Evidence to Support the Trial Court's Finding That the Value of the Real Property at the Time of the Breach of Contract Was $400 Per Acre?*

It is a well established rule that in examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is resolved in favor of the finding. (*Nestle v. City of Santa Monica,* 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].)

■ The measure of damages where the purchaser defaults in a contract involving the sale of land is the excess, if any, of the contract price over the market value at the date of breach. (Civ. Code, § 3353; *Abrams* v. *Motter,* 3 Cal.App.3d 828, 840 [83 Cal.Rptr. 855]; *Royer* v. *Carter,* 37 Cal.2d 544, 549 [233 P.2d 539].) The contract price in the present case was $700 per acre.

■ Evidence presented at trial concerning the value of the land at the time of breach included testimony by Young (the owner of the land), Mr. Robert Beeney, an expert land appraiser testifying for Young, and Milton Tynan, an expert land appraiser testifying for Redman. Considering the evidence in the light most favorable to respondents, as we must, both Young and Beeney testified that the value of the land at the time of breach was approximately $400. Young, as owner of the land, was competent to testify as to the value of his property. ■ An owner's opinion of his property's value is competent and need not be based upon any specific facts; the weight to be given such testimony is determined by the trier of fact. (See Evid. Code, § 800; *May* v. *May,* 275 Cal.App.2d 264, 278 [79 Cal.Rptr. 622].)

Defendant Redman contends that the opinion of Mr. Beeney was wholly unsubstantiated by the market data study which he undertook concerning the value of the land, and that his testimony regarding the value of the land should be disregarded. Mr. Beeney, an expert land appraiser, in performing his market data study, compiled information relating to some 30 sales. Defendant's counsel had an adequate opportunity to cross-examine Mr. Beeney and presented his own expert witness in rebuttal. The trial judge observed the demeanor of the two expert witnesses and examined the exhibits presented at trial in their proper context.

■ ■ We conclude that the testimony of Young and Mr. Beeney, both independently and taken together, constitutes substantial evidence to support the finding of the trial court concerning the value of the land at the time of breach.

### III

*Did the Award of $1,000 in Attorney Fees to Young, Kloosterman and Gibbons by Way of Sanctions Constitute an Abuse of Discretion by the Trial Court?*

There is no clear authority in California determining the power of the trial court to award sanctions in the form of attorney fees to the prevailing litigant when his opponent has maintained an unfounded action or defense and has done so " 'in bad faith, vexatiously, wantonly or for oppressive reason.' " (*D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 26 [112 Cal.Rptr. 786, 520 P.2d 10].) Although appellants raised the contention affirmatively in *D'Amico,* the California Supreme Court refrained from deciding the question because the trial court had there indicated its view that, while it possessed the power to award attorney fees as a sanction for vexatious conduct, the circumstances of the case did not warrant that action. A sanction of $750 had already been assessed in connection with discovery, and the court felt that no further sanctions were justified. (*Id.,* at pp. 26-27.) The California Supreme Court concluded that, even assuming the power of the trial court to award sanctions, the plaintiffs did not demonstrate an abuse of discretion by the trial court in awarding an amount smaller than the plaintiffs desired. (*Id.,* at p. 27.)

Similarly, in *Douglas* v. *Los Angeles Herald-Examiner,* 50 Cal.App.3d 449 [123 Cal.Rptr. 683], the reviewing court declined to decide the issue because there were no findings of fact entered by the trial court to justify an award of attorney fees as sanctions. (*Id.,* at pp. 468-469.)

In the present case the issue was properly raised in the trial court, where the court concluded that "the defenses and cross-complaints of defendant REDMAN . . . were a sham and unmeritorious, as a matter of law, and were interposed without probable cause and with malice." The judgment then awarded $1,000 to each respondent "as sanctions for defendant REDMAN's vexations and oppressive conduct in maintaining, in bad faith, his unfounded defenses and cross-actions."[1]

Code of Civil Procedure section 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation . . . is left to the agreement, express or implied, of the parties; . . ."

This is a codification of the general rule, also known as the American Rule, that attorney fees, are not taxable as costs against the

---

[1]As in *D'Amico, supra,* no statute provides for an award of attorney fees in a case such as this, and there has been no agreement between the parties concerning attorney fees. (See *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 25.)

losing party.[2] (See *F. D. Rich Co.* v. *Industrial Lumber Co.* (1974) 417 U.S. 116, 128-131 [40 L.Ed.2d 703, 713-715, 94 S.Ct. 2157].) "The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. This Court first announced that rule in *Arcambel* v. *Wiseman,* 3 Dall. 306 (1796), and adhered to it in later decisions." (*Fleischmann Corp.* v. *Maier Brewing* (1967) 386 U.S. 714, 717-718 [18 L.Ed.2d 475, 478, 87 S.Ct. 1404].) Limited exceptions have developed founded on equitable principles; these include counsel fees as an item of compensatory damages, rather than costs (*Vaughan* v. *Atkinson* (1962) 369 U.S. 527 [8 L.Ed.2d 88, 82 S.Ct. 997]), and attorney fees as part of the fine for wilful disobedience of a court order. (*Toledo Scale Co.* v. *Computing Scale Co.* (1923) 261 U.S. 399, 426-428 [67 L.Ed. 719, 730-731, 43 S.Ct. 458].)

The power of federal courts in equity suits to allow counsel fees when these are not incorporated in a contract or included in statutory costs has evolved on an historical foundation. "Allowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts. The suits 'in equity' of which these courts were given 'cognizance' ever since the First Judiciary Act, constituted that body of remedies, procedures and practices which theretofore had been evolved in the English Court of Chancery, subject, of course, to modifications by Congress, *e.g., Michaelson* v. *United States,* 266 U.S. 42. The sources bearing on eighteenth-century English practice—reports and manuals —uniformly support the power not only to give a fixed allowance for the various steps in a suit, what are known as costs 'between party and party,' but also as much of the entire expenses of the litigation of one of the parties as fair justice to the other party will permit, technically known as costs 'as between solicitor and client.' To be sure, the usual case is one where through the complainant's efforts a fund is recovered in which others share. Sometimes the complainant avowedly sues for the common interest while in others his litigation results in a fund for a group though he did not profess to be their representative." (*Sprague* v. *Ticonic Bank* (1939) 307 U.S. 161, 164-166 [83 L.Ed. 1184, 1186-1187, 59 S.Ct. 777].)

The American Rule is based upon the philosophy that "one should not be penalized for merely defending or prosecuting a lawsuit, and that the

---

[2]The American Rule has been repeatedly criticized over the years. (See generally, Ehrenzweig, *Reimbursement of Counsel Fees and the Great Society* (1966) 54 Cal.L.Rev. 792; Kuenzel, *The Attorney's Fee: Why Not a Cost of Litigation?* (1963) 49 Iowa L.Rev. 75; McLaughlin, *The Recovery of Attorney's Fees: A New Method of Financing Legal Services* (1972) 40 Fordham L.Rev. 761.)

poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." (*Fleischmann Corp.* v. *Maier Brewing, supra,* 386 U.S. at p. 718 [18 L.Ed.2d at p. 478].) Other factors supporting the rule against fee shifting include the difficulties of proof inherent in litigating the question of what constitutes reasonable attorney fees, and the possibility of a threat being posed to the principle of independent advocacy by having the earnings of the attorney flow from the pen of the judge before whom he argues. (*F. D. Rich Co.* v. *Industrial Lumber Co., supra,* 417 U.S. at p. 129 [40 L.Ed.2d at p. 713].)

Each of the nonstatutory exceptions which appellate decisions in this state have grafted upon the general rule of section 1021 is based upon inherent equitable powers of the court.

The first of these is the "common fund" principle, which allows attorney fees to be awarded when an action brought by a plaintiff, for the benefit of a number of persons who are entitled to a common fund, results in the creation or preservation of that fund. (See, e.g., *Estate of Stauffer,* 53 Cal.2d 124, 132 [346 P.2d 748]; *Estate of Reade,* 31 Cal.2d 669, 671-672 [191 P.2d 745]; see generally 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 129-133, pp. 3278-3283.)

The second principle is the "substantial benefit" rule, a variant of the common fund doctrine, which provides that when a class action or corporate derivative action results in the conferral of substantial benefits, even if nonpecuniary in character, the trial court has inherent equity jurisdiction to award attorney fees to the prevailing party and these are payable by the defendant even though the action produced no common fund from which they might be paid. (See, e.g., *Knoff* v. *City etc. of San Francisco,* 1 Cal.App.3d 184, 203-204 [81 Cal.Rptr. 683]; *Fletcher* v. *A. J. Industries, Inc.,* 266 Cal.App.2d 313, 318-325 [72 Cal.Rptr. 146]; see also *Sprague* v. *Ticonic Bank, supra,* 307 U.S. 161; see generally, 4 Witkin, Cal. Procedure, *supra,* Judgment, § 134, pp. 3283-3284.)

Federal courts recognize in addition to the "common fund" (*Fairley* v. *Patterson* (5th Cir. 1974) 493 F.2d 598) and its variant, the "substantial benefit" (*Hall* v. *Cole* (1973) 412 U.S. 1, 5 [36 L.Ed.2d 702, 707, 93 S.Ct. 1943]) doctrines, a "private attorney general" theory for fee shifting based on the premise that the expense of litigation may constitute a formidable obstacle to the private litigation necessary to enforce important public policies. (See, e.g., *Cooper* v. *Allen* (5th Cir.

1972) 467 F.2d 836; *Bradley* v. *Richmond School Board* (1974) 416 U.S. 696 [40 L.Ed.2d 476, 94 S.Ct. 2006].) An additional justification for imposition of attorney fees is where an unfounded action or defense is maintained in bad faith, vexatiously, wantonly or for oppressive reasons. The exercise of the court's inherent powers to make such an award is, however, limited to exceptional cases where dominant reasons of justice support the award. (*Vaughan* v. *Atkinson, supra,* 369 U.S. 527; *F. D. Rich Co.* v. *Industrial Lumber Co., supra,* 417 U.S. at p. 129; *Fairley* v. *Patterson, supra,* 493 F.2d 598; *First National Bank in Sioux Falls* v. *Dunham* (8th Cir. 1973) 471 F.2d 712; *Guardian Trust Co.* v. *Kansas City Southern Ry. Co.* (8th Cir. 1928) 28 F.2d 233, reversed on other grounds, (1930) 281 U.S. 1 [74 L.Ed. 659, 50 S.Ct. 194]; see *Bradley* v. *Richmond School Board, supra,* 416 U.S. at pp. 706-708 [40 L.Ed.2d at pp. 485-486]; see generally 6 Moore's Federal Practice (2d ed. 1948) § 54.77 [2], p. 1709 et seq. [and cases cited therein].)

In *Guardian Trust Co.* v. *Kansas City Southern Ry. Co., supra,* 28 F.2d 233, the court traced the history of the assessment of costs and attorney fees in courts of equity and concluded that the English Chancery Court had inherent power to award attorney fees in cases (a) where gross charges of fraud and misconduct against a trustee were made and not sustained, and (b) where the main ground of the suit was disclosed to be false, unjust, vexatious, wanton or oppressive. (*Id.,* at p. 241.) The theory supporting such an award has been extended to other situations where compelling justice demands that equitable principles prevail.

For example, in *Vaughan* v. *Atkinson, supra,* 369 U.S. 527, a seaman brought suit in admiralty to recover maintenance and cure, and damages for failure to pay maintenance and cure. The court found that respondents had been "callous in their attitude," making no investigation of the libellant's claim and by their silence neither admitting nor denying it, so that as a result the seaman was forced to hire a lawyer and go to court to recover what was plainly owed to him. Because of respondents' "willful and persistent" default, the seaman was awarded attorney fees under the authority of admiralty courts to grant equitable relief. (*Id.,* at pp. 530-531 [8 L.Ed.2d at pp. 91-92].)

Equity or chancery law had its inception in those exceptional situations where the application of strict rules of law, by reason of their universality, would impose injustice in the affairs of men and women. Thus to entitle a party to the equitable interposition of a court, he must show a proper case for the interference of a "Court of Chancery" and

one in which he has no adequate or complete relief at law. (*De Witt* v. *Hays,* 2 Cal. 463, 469 [56 Am.Dec. 352].) " 'Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.' " (*Satterfield* v. *Garmire,* 65 Cal.2d 638, 645 [56 Cal.Rptr. 102, 422 P.2d 990], quoting *Farrell* v. *County of Placer,* 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323].)

Free access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a colorable claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties. However, there is the implicit assumption, under the American Rule, that the parties to a lawsuit will act in "good faith." The essential element in an award of attorney fees for vexatious litigation is the existence of "bad faith" on the part of the unsuccessful litigant. Such "fee shifting" could help to deter "bad faith" litigation and to preserve the foundation upon which free access to the courts is built. (See Note, *Use of Taxable Costs to Regulate the Conduct of Litigants* (1953) 53 Colum.L.Rev. 78.) This would comport to the court's historical role "to do that which appertains to justice and that which appertains to example, and to vindicate the honor and justice of the court." (See *Dungey* v. *Angove,* 2 Ves. Jr. 304, 313.)

Having discussed, generally, the power of the trial court to award attorney fees by way of sanctions in the federal courts and certain instances where California courts have permitted such sanctions based on the inherent powers of the court, we turn to the case at bench. Although the California Legislature has enacted legislation empowering the appellate courts to impose such sanctions (Code Civ. Proc., § 907), it has not done so as to the trial courts, apparently codifying the American Rule in Code of Civil Procedure section 1021 as hereinbefore discussed.

It may well be advisable in light of the foregoing and the ever-increasing cascade of civil litigation that the power to impose such sanctions in California's trial courts should exist, thus adding a much needed element of discipline on the trial court level toward a reduction in the burning up of valuable court time handling frivolous, "bad faith" matters devoid of merit and make whole litigants who were forced to expend money on legal fees to meet such unfounded positions. However, absent legislative action, for us to declare that the trial court has inherent power to impose such sanctions takes a giant step in

expanding the power of the court with sweeping ramifications. Such power in the trial court, unfettered and unbridled, without appropriate safeguards and guidelines, could cancel out any benefits derived to the judicial process by generating a proliferation of appeals. We therefore are of the view that any power of the trial court to impose such sanctions should be created by the legislative branch of government with appropriate safeguards and guidelines developed following a thorough in-depth investigation.[3]

Accordingly, since (1) Code of Civil Procedure section 1021 provides that attorney fees are "left to the agreement, express or implied, of the parties" *except* as specifically provided by statute and (2) since Code of Civil Procedure section 1992 is apparently the only statute providing for such sanctions relevant to the instant case, we conclude the awarding of $1,000 in attorney fees to Young, Kloosterman and Gibbons by way of sanctions was improper in that any award by way of sanctions in the instant case must be determined in accordance with Code of Civil Procedure section 1992.[4]

## CONCLUSION

We conclude that the trial court did not abuse its discretion in denying defendant's motion for a continuance and there was substantial evidence to support the trial court's award of damages. However, the awarding of $1,000 attorney fees to each respondent by way of sanctions was improper, constituting an abuse of discretion.

## DISPOSITION

The judgment as to the extent it awards damages and interest to respondents is affirmed, but the judgment to the extent it awards sanctions to respondents is reversed, and the matter is remanded to the trial court for reconsideration of the matter of sanctions which are to be determined in accordance with Code of Civil Procedure section 1992. Each party to bear his own costs on appeal.

Lillie, Acting P. J., and Thompson, J., concurred.

---

[3] See Pfennigstorff, Legal Expense Insurance in Europe; American Bar Foundation 1974; "Study of Considerations Involved in Fee Shifting."

[4] "§ 1992. A witness disobeying a subpoena also forfeits to the party aggrieved the sum of one hundred dollars, and all damages which he may sustain by the failure of the witness to attend, which forfeiture and damages may be recovered in a civil action."