Joseph E. GIBBS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Nov. 14, 1983.
Decided: Jan. 18, 1984.*

* The decision of the Court was announced in an Order dated January 18, 1984. This Opinion is issued in conformity with that Order to give precedential effect to the Court's ruling.

Paul S. Swierzbinski (argued), Wilmington, for defendant-appellant.

John S. Parkins, Jr. (argued), Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C.J., McNEILLY and MOORE, JJ.

McNEILLY, Justice:

Defendant appeals from a jury verdict and rulings of the Superior Court on various motions relating to the prosecution of the defendant on illegal drug charges. At trial, defendant was convicted of Conspiracy in the Second Degree, Possession of a Narcotic Schedule I Controlled Substance, Possession of a Narcotic Schedule II Controlled Substance, Possession with Intent to Deliver a Narcotic I Controlled Substance, and Possession of a Non-Narcotic Schedule I Controlled Substance.

I

Defendant's conviction concluded a long investigation by the Wilmington Police Department (WPD) into the activities of defendant and others regarding the use of defendant's residence (615 N. Jefferson) as a center for illegal drug and narcotic activity. During the course of the investigation which included the use of informants to purchase illegal drugs from defendant at his residence, the WPD applied for an Order authorizing a wiretap of defendant's telephone. Based upon a determination that probable cause existed to believe that defendant and others were involved in the sale of illegal drugs, the Superior Court authorized a wiretap to commence on October 15, 1979 and terminate on November 3, 1979, subject to the following guidelines:

> Further ordered that said interception shall begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under this order.

> \*    \*    \*    \*    \*    \*

> Further ordered that said interception shall not automatically terminate when the first described communications have been obtained, but said interception shall be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception.

> Further ordered that affiants file an informal weekly report to the Honorable Joseph T. Walsh during the pendency of the authorized wire interception detailing any progress or problems with said wire interception and efforts made by affiants

to minimize non-pertinent conversations or reasons for failure to so minimize. Said report may be prepared by the Office of the Attorney General.

Pursuant to the Order, the WPD began interception at approximately 1 P.M. on October 15, 1979.

During the time period between the initiation of the wiretap and November 2, 1979 when it was terminated, the WPD via the interception received information which led to the arrests of the defendant as well as Carlton Armstead (Armstead), another resident of 615 N. Jefferson, and Marzette Traylor (Traylor), another principal in the investigation. A search of defendant's motor vehicle at the time of his arrest on October 27, 1979 uncovered a glassine bag and a plastic bag, both containing a white powder. A search of Traylor's vehicle incident to her arrest on November 2, 1979 and pursuant to her written permission, resulted in the discovery of twelve (12) glassine bags containing a white powder. In addition, seven (7) more glassine bags containing a white powder were discovered within fifteen minutes of Traylor's arrest in the floorboards of defendant's second floor bedroom.

All of the evidence seized during the three (3) searches was taken to WPD headquarters, placed in evidence lockers, and later taken to the office of the Medical Examiner where it was analyzed as heroine and cocaine. A problem arose, however, between then and the time of trial in that the substances seized were destroyed by the WPD pursuant to a "Motion By the State For An Order Permitting The Destruction Of Drug Evidence" which had been sought by the Attorney General's Office in regard to a list of 340 closed cases that erroneously included the defendant's case which was still open.

On appeal, the defendant raises seven (7) arguments asserting an abuse of discretion on the part of the Trial Court. We treat each contention separately.

II

Defendant's first contention is that the Superior Court abused its discretion by permitting the trial to proceed after the State had admitted that the evidence seized had been destroyed prior to trial. Defendant asserts that *Deberry v. State*, Del.Supr., 457 A.2d 744 (1983), demands reversal of his conviction on all counts. We disagree.

■■■■ At the outset, we note that the analysis set forth in *Deberry* must be considered whenever there is a claim that potentially exculpatory evidence is lost or destroyed by the State. Under *Deberry*, that analysis must consider:

1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or Brady?

2) if so, did the government have a duty to preserve the material?

3) if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?

*Id* at 750 (footnotes omitted).

In particular, the third step in that analysis requires "a balance between the nature of the State's conduct and the degree of prejudice to the accused" *Id* at 752. In analyzing prejudice, the Court should weigh:

the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; [and] the probable effect on the jury from absence of the evidence....

*Id* at 752–753 (quoting *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir.1979) (Kennedy, J., concurring)).

For instance, in *Deberry*, the alleged rape victim had suffered a severe cut to her hand. The defendant, believing that an absence of blood or semen on the pants he

**270**

wore that evening which had been seized by the police would vindicate him, requested their production so that he could make an inspection. In reference to the State's response to the discovery request that the pants in question had been inadvertently lost, this Court notes that:

[i]n light of the inconclusive results of the forensic tests, Deberry's clothes, on the basis of possible stains and hairs, could have disputed the victim's story. Furthermore, the absence of stains and hairs on his clothing would have been material to the issue of guilt since the evidence could have created a reasonable doubt not otherwise present.

*Id* at 749.

The instant case, however, is distinguishable on its facts thus requiring a different result.

█ The record clearly demonstrates that here, unlike the situation in *Deberry,* there was sufficient reliable evidence of a secondary or substitute nature to support the conviction. Testimony of the police officers involved and the Medical Examiner assigned to the case supports the determination that a sufficient chain of custody of the substances seized had been shown and that the results of the analysis were conclusive. While we could conceive a situation where the negligence of the WPD in destroying evidence under like circumstances could justify an opposite result, as in the case where the substances involved had not yet undergone testing, the lack of safeguards permitting accidental destruction in this case did not significantly prejudice the defendant.

### III

█ Defendant's next contention charges that a series of rulings by the Trial

Judge concerning the destroyed evidence prevented the defendant from obtaining a fair trial. The first such ruling involved the failure of the Trial Judge to instruct the jury per defendant's request on the State's duty regarding chain of custody. While such instructions are appropriate in a given situation,[1] such was not the case here because the evidence presented at trial did not raise a reasonable doubt as to any element of the offense. The State presented sufficient evidence regarding the chain of custody whereas the defendant offered no proof beyond mere conjecture that the chain of custody was not sufficient. Moreover, the instructions taken as a whole overcame a possible deficiency in this regard in that the jury was instructed that it must find beyond a reasonable doubt that the substances in question were what the analysis determined them to be. *See Jenkins v. State,* Del.Supr., 305 A.2d 610, 617 (1973).

█ Defendant also alleges that the Trial Judge abused his discretion in refusing to admit portions of the Motion for Destruction and by limiting the defendant's examination of the State Prosecutor on the exact details surrounding the accidental destruction of the substances. In particular, the defendant argues that the Trial Court's ruling that "the evidence was inadvertently destroyed" clearly contradicted the stated purpose set forth on the Motion for Destruction that "the attached criminal cases ... will not be prosecuted further by the State of Delaware" and, as such, admission of the Motion page and accompanying Order was proper.[2] With this, we cannot agree because, as the Trial Judge noted, evidence may be excluded if its probative

---

1. 11 *Del.C.* § 302(b) provides as follows:

    (b) The defendant may produce whatever evidence he has tending to negate the existence of any element of the offense, and, if the court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt.

2. At trial, defendant explained that he did not seek admission of the entire motion because the other pages containing the list of 340 cases also included references to prior drug charges concerning the defendant that had since been closed.

value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading of the jury. D.R.E. 403. Since we find that the evidence in question would have misled the jury if admitted as requested, the Trial Judge did not abuse his discretion.

■ As to the limitation placed on defendant in regard to his examination of the prosecutor on specific matters surrounding the destruction of the evidence, the Trial Judge correctly ruled that such limitation was proper since, if the details surrounding the negligence was elicited, the State in explaining the mistake could properly refer to prior cases against defendant contained in the Motion for Destruction list of 340 cases that were presumed closed. Therefore, the limits placed on the questioning were proper in that they prevented possible prejudice to the defendant because of defendant's involvement in similar activities.

### IV

The next argument raised by defendant is that the State was required to minimize telephone call interception and an alleged failure to do so violated defendant's right to privacy.

■ In order to reach a decision on this issue, it must first be determined whether the procedures followed by the monitoring agents were reasonable in light of the circumstances surrounding the wiretap. *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). The record clearly demonstrates that this case involved a widespread narcotics conspiracy which included an indefinite amount of participants who at times used what could be characterized as coded language. Equally important, some calls started out innocently but eventually included references closely related to the illegal activity suspected. Moreover, a call-waiting feature was discovered five days into the interception which along with power surges in the City's wires rendered the WPD equipment unreliable in detecting incoming calls while on total minimization. Based on these de-

velopments and the fact the officers still made a good faith effort to minimize evidenced by the fact that calls made to a lawyer, doctor, and a court were minimized, we find that the Trial Judge did not abuse his discretion when he found, in response to defendant's Motion to Suppress, that:

[i]n situations which could be fairly characterized as non pertinent, the determination to terminate the interception was in most cases made in seconds. In others, and they were but a few of the total, there was ample ground to believe incriminating evidence might be revealed during their course. Some of those are characterized by the ambiguity of the conversations. In all, the minimization in this case was not unreasonable. The conduct of the police officers substantially complied with constitutional and statutory prerequisites.

### V

Defendant's next assertion is that there was insufficient probable cause for issuance of the wiretap authorization under the requirements of 11 *Del.C.* § 1336 and the Fourth Amendment. It is defendant's position that the Affidavit of Application for the wiretap contained numerous conclusory statements with no showing upon which basis the statements were made.

■ Our review of the affidavit indicates that the argument set forth by defendant is drawn from a reliance upon isolated comments contained therein. The affidavit which must be considered as a whole clearly establishes probable cause to believe that defendant was involved in illegal drug activity from his residence. *See Dunfee v. State*, Del.Supr., 346 A.2d 173 (1975). In so ruling, we find that the information set out in the affidavit is supported by a factual basis. Also, the informants' tips relied upon were established as trustworthy, and the hearsay information supplied by them was corroborated by independent police investigation.

## VI

In addition to the alleged shortcomings in the Affidavit for Application concerning conclusory statements, defendant also contends that the use of the toll records of defendant's home telephone, procured by means of a subpoena, as additional grounds for issuance of the wiretap authorization violated his right against unreasonable searches and seizures. Defendant is particularly concerned in that a subpoena unlike a warrant does not require that probable cause be established.

We find that defendant's concern is misplaced in that Fourth Amendment protection is not invoked unless there is a reasonable or legitimate expectation of privacy. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Applying this standard, the defendant cannot have a legitimate expectation of privacy in his toll call records in that this information is voluntarily conveyed to the phone company, which retains this information for billing purposes. Therefore, as in the case of a pen register, no warrant is required. *Accord, State v. Miller,* Del.Super., 449 A.2d 1065 (1982).

## VII

Defendant's next contention concerns the admission into evidence of tape recordings and transcripts of intercepted conversations. The facts reveal that a composite tape of some seventeen tapes, which were not individually admitted into evidence, was accepted into evidence, the transcript of which being described as accurate but not exact by an attesting police officer. Further, parts of the tape were unintelligible but the Trial Judge ruled that one could get "the gist of the conversation even without the written transcription".

The standard on appeal for evidentiary rulings, as defendant concedes, is whether the Trial Judge abused his discretion. *Eaton v. State,* Del.Supr., 394 A.2d 217 (1978). Allowing the use of a tape as evidence is not an abuse of discretion where the defendant only disputes its clarity and not its accuracy. *Lewis v. State,* Del.Supr., 416 A.2d 208 (1980). Furthermore, even a failure by a Trial Judge to make a preliminary examination outside the presence of the jury to verify audibility as in the instant case is not in itself ground for reversal. *United States v. Bryant,* 480 F.2d 785 (2d Cir.1973). Therefore, we find no abuse of discretion on the part of the Trial Judge in admitting the composite tape into evidence even though its unintelligibility in parts was only realized when the tape was played at trial.

As to a claim by defendant that the Trial Court erred in failing to strike the composite tape and transcript because the original seventeen tapes were not admitted into evidence, we likewise find no error. We note that defendant had a complete set of those seventeen tapes in his possession for two years and D.R.E. Rule 1006 provides that "[t]he contents of voluminous ... recordings ... which cannot conveniently be examined by the court may be presented in the form of a chart, summary or calculation [provided] [t]he originals ... shall be made available for examination ... by other parties at reasonable time and place."

## VIII

Defendant's last contention is that the Court erred in admitting the twelve (12) bags of powder seized from Traylor's car as evidence against the defendant. We find, however, that the evidence was properly admitted as evidence of a conspiracy in that the wiretap had supplied the WPD with information that defendant and Traylor were going to New York on November 1, 1979 to purchase heroin. The fact they returned on November 2, 1979 and heroin was found in Traylor's car on that date indicates that there was probative value in the substances seized going to the conspiracy charge.

\*     \*     \*

AFFIRMED.