539 A.2d 1173

**LEGAL AID BUREAU, INC., et al.**

v.

**Carrie FARMER, et vir.**

**No. 1201, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

April 13, 1988.

Melvin J. Sykes, Baltimore, for appellants.

Stephen J. Baker (Baker and Thomey, P.A., on the brief), Elkton, for appellees.

Argued before WILNER, GARRITY and ALPERT, JJ.

WILNER, Judge.

This case began as a landlord-tenant action in the District Court. Appellants—Legal Aid Bureau, Inc. and David P. Bokow—represented the tenants, whom the landlords were seeking to evict from a mobile home park. From two judgments entered against the tenants in the District Court, appellants counseled and filed appeals to the Circuit Court for Cecil County. Concluding that the appeals were taken in bad faith, the Circuit Court not only affirmed the District Court judgments but entered its own judgment for $960 against appellants. That judgment was entered pursuant to Md.Rule 1–341 and represented the value of the legal services rendered to the landlords in both the District and Circuit Court proceedings.

Appellants do not challenge—at least not directly—the disposition of the District Court appeals; they obviously have no standing in that regard. They seek to overturn only the $960 judgment entered against them.

### (1) *Jurisdiction*

Appellants assume, with no objection from the landlords/appellees, that the judgment entered against them is indeed appealable to this Court. Although we shall ultimately conclude that it *is* so appealable, that conclusion is not so compellingly evident as to avoid the need for some analysis.

The jurisdictional question arises from the fact that the $960 judgment was rendered by the Circuit Court in, and as part of, a proceeding in which it was exercising a special appellate jurisdiction to review the judgments of the District Court. See Md.Code Ann.Cts. & Jud.Proc. art., § 12–401. Ordinarily, further appellate review of judgments entered in that kind of proceeding is committed exclusively to the Court of Appeals upon a timely filed petition for *certiorari.* A quick summary of the relevant statutes will illustrate the problem.

Md.Code Ann.Real Prop. art., § 8A–1701(f) and Cts. & Jud.Proc. art., §§ 12–401(a) and 12–403 make clear that an appeal from a judgment for repossession entered by the District Court against a mobile home park tenant goes to the Circuit Court, which, in considering that appeal, exercises a special statutory jurisdiction.

Cts. & Jud.Proc. art., § 12–301 provides, in relevant part, that:

> "Except as provided in § 12–302, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law."

Section 12–302(a), however, states that "[u]nless a right to appeal is expressly granted by law, § 12–301 does not

permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court...." Further appellate review in those kinds of cases is provided for by §§ 12–305 and 12–307. Section 12–305 states, in relevant part, that:

"The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court ... if it appears to the Court of Appeals, upon petition of a party that:

(1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; or

(2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed."

The commitment of further appellate jurisdiction to the Court of Appeals is confirmed by §§ 12–307 and 12–308, which "allocate appellate jurisdiction between the Court of Appeals and the Court of Special Appeals." § 12–306. Section 12–307(2) expressly vests in the Court of Appeals "[j]urisdiction to review a case or proceeding decided by a circuit court, in accordance with § 12–305 of this article." Consistent with that, § 12–308 provides that "[e]xcept as provided in § 12–307," this Court has exclusive initial appellate jurisdiction over reviewable judgments of the circuit court.

It is evident, then, that, unless the judgment entered by the Circuit Court pursuant to Md.Rule 1–341 has some special, collateral status, it would not be reviewable by us.

The Rule states:

"In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the

adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it."

The nature of judgments entered under this Rule (or its predecessor, former Md.Rule 604b) or under the Federal Civil Rights laws (42 U.S.C. § 1988) has been before this Court and the Court of Appeals on a number of occasions, but never in this context. In each instance, so far, the judgment was entered by a circuit court in an action over which it had original trial jurisdiction. Even in that setting, however, the precise nature of such judgments has not been altogether clear.

In *Simmons v. Perkins*, 302 Md. 232, 486 A.2d 1192 (1985), the Court held that a judgment entered against a party under the Rule for filing a frivolous motion in the proceeding could not be immediately appealed under Cts. & Jud.Proc. art., § 12–303(3)(v) as an order for "the payment of money." In *Yamaner v. Orkin*, 310 Md. 321, 529 A.2d 361 (1987), the Court held that such a judgment was also not immediately appealable under the "collateral order doctrine." The principal basis for that conclusion was that a judgment under Rule 1–341 against a party to the underlying litigation "will almost always fail to meet [the] requirement" of the collateral order doctrine that "there be a serious risk of irreparable loss of the claimed right if appellate review is deferred until after final judgment." 310 Md. at 326, 529 A.2d 361. The notion, then, was that the award of attorneys' fees would, in fact, be reviewable in an appeal taken after the circuit court proceeding had been concluded. Indeed, in n. 7 at 327, 592 A.2d 361, the Court cautioned that "[w]e indicate no opinion on the appealability under the collateral order doctrine of a sanctions order which is directed to *counsel*," observing that, where sanctions are directed only to counsel, "it has been held that the order might escape review after final judgment if the parties settled." (Emphasis added.)

In *Dent v. Simmons*, 61 Md.App. 122, 485 A.2d 270 (1985), we considered whether a circuit court could enter a

judgment under the Rule more than 30 days after it had entered final judgment in the underlying action and while the judgment in that underlying action was pending appeal in this Court. We concluded that the circuit court *could* enter such a judgment because it "raised legal issues collateral to the main cause of action" which would "not affect the subject matter of the appeal" from the judgment in the underlying action. *Id.*, 130, 485 A.2d 270. The Court of Appeals reached essentially the same conclusion with respect to an award of counsel fees under 42 U.S.C. § 1988 in *County Exec., Prince Geo's Co. v. Doe*, 300 Md. 445, 479 A.2d 352 (1984), and in *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 511 A.2d 1079 (1986). In *Doe*, the Court observed, in [300 Md.] n. 4 at 451, 479 A.2d 270, that "under 42 U.S.C. § 1988, a claim for an attorney's fee, while an integral part of the remedy under 42 U.S.C. § 1983, is viewed as a collateral matter from the § 1983 action; thus the claim for an attorney's fee may be brought following a final judgment in a § 1983 action."

It would seem from these cases that judgments of this type have been regarded as collateral to the underlying action for some purposes but not for others. They are somewhat of a hybrid and, when entered by a circuit court in a proceeding under Cts. & Jud.Proc. art., § 12–401, do not fall neatly into our jurisdiction under §§ 12–301 and 12–308 or that of the Court of Appeals under §§ 12–305 and 12–307. Yet, unless we are to conclude that such judgments are absolutely unreviewable, which we are unwilling to do, we must fit them in one place or the other.

■ In making this decision, we believe, as did the Court in *Yamaner*, that a distinction needs to be drawn between a judgment entered against a *party* to the action and one entered against *counsel.* We address here only the latter situation, the one actually before us. We conclude that, for purposes of appellate jurisdiction, a judgment entered by the circuit court against the attorney is sufficiently collateral to the underlying action as to fall within our bailiwick. We reach that conclusion for several reasons.

We first observe that, although a judgment under Rule 1–341 must emanate from an underlying civil action and often, as here, is predicated on the very bringing of that action, it is not *necessarily* tied to the merits or the eventual outcome of the underlying action. It can, and occasionally does, arise from a variety of acts or omissions on the part of counsel during the proceeding that may have little or no bearing on the eventual decision in the case—the filing of pleadings, discovery, or other papers that the court finds to be without substantial justification, for example. Even where, as here, the judgment is predicated on a finding by the court that the action itself is so devoid of merit as to be brought in bad faith or without substantial justification, the validity of that determination is not dependent upon the validity of the underlying disposition. As we made clear in *Dent v. Simmons, supra,* 61 Md.App. 122, 485 A.2d 270, the fact that a court rejects the proposition advanced by counsel and finds it to be without merit does not mean that the proposition was advanced without substantial justification or in bad faith. There would be no inconsistency whatever in an appellate court affirming the judgment in the underlying action and reversing a Rule 1–341 judgment as an abuse of discretion. In that sense, the Rule 1–341 judgment against the attorney is clearly collateral to the underlying judgment.

The collateral quality of this kind of judgment certainly makes it eligible for inclusion under §§ 12–301 and 12–308, rather than under §§ 12–305 and 12–307. That it *should* be so included, as a matter of both statutory construction and jurisprudential imperative becomes clear when we consider the effect of not so including it.

If a judgment of this type entered against counsel is not appealable to us under §§ 12–301 and 12–308, it may well be the only kind of money judgment for which an appeal of right to some appellate court would not exist. Indeed, even beyond the mere non-appealability as of right, if counsel were left solely to seeking discretionary review in the Court of Appeals under the exacting standards of § 12–305, these

judgments, as a practical matter, might be immune from any appellate review. The baleful consequences of that are not difficult to imagine.

For these reasons, we believe that a judgment under Md.Rule 1–341 rendered against an attorney by a circuit court is appealable to this Court under Cts. & Jud.Proc. art., §§ 12–301 and 12–308, even when emanating from a proceeding conducted by the circuit court under § 12–401. This, of course, in no way diminishes the prerogatives of the Court of Appeals. Should that Court find sufficient merit in a petition for *certiorari* filed by the lawyer, whether or not in conjunction with a petition seeking review of the underlying judgment in the District Court appeal, it can, if it chooses, review the judgment against the lawyer either before or after a decision by this Court. See § 12–307(1).

### (2) *The Facts*

Raymond and Pamela Surbaugh own a mobile home. At some point in 1983 or 1984, they leased a lot in the Mill Creek Mobile Home Park (then known as the Sun Valley Trailer Court) on which they parked their home. Despite the clear requirement of Maryland law that rental agreements in mobile home parks be in writing (see Md. Code Ann. Real Prop. art., §§ 8A–101(i), 8A–201(3), 8A–202), the rental agreement between the Surbaughs and the landlord was an oral one, from month to month. The rent, of $195, was due on the first of the month.

For the first couple of years, there seem to have been no problems between landlord and tenants, although we gather that the Surbaughs did not always pay their rent by the first of the month. The original landlord apparently allowed a five-day grace period. At some point, the park was sold to the current landlords—the Farmers—who began insisting on strict compliance. On October 2, 1986, they filed an action in District Court for repossession of the lot, claiming an arrearage of two months rent. That action was voluntarily dismissed by the landlords at trial on October 15 upon payment of the arrearage by the Surbaughs. On

November 3, 1986, the Farmers filed another action, claiming $235 for November. How they computed that amount is unexplained. At trial on November 12, judgment by consent was entered for $195 plus $13 costs, but execution was stayed for several weeks. The judgment was eventually paid. The same thing occurred in December; the action was filed December 9, judgment for $195 plus costs was entered December 17, execution was stayed, and the judgment was eventually paid. The landlords sued again in January; this time the action was dismissed for failure of anyone to appear, as the tenants paid what was due before trial.

At the end of April, Mrs. Surbaugh called Mrs. Farmer and told her that, because of an unexpected automobile repair bill, the May rent would be late. In fact, she tendered the $195 rent on May 9, but the landlords refused to accept it. Three days earlier, they had filed another action in District Court, seeking both repossession and judgment for the amount due. At trial on May 20, in open court, the Surbaughs, represented by appellants, again tendered the $195 due, plus $13 in court costs, and, once again, the landlords refused to accept it. This time, the court entered judgment for possession and for the rent and court costs, without any right of redemption.

The next day, through appellants, the Surbaughs filed an appeal to the Circuit Court and a motion to stay execution of the judgment without bond. The motion averred that the Surbaughs resided on the lot with three minor children, that they had twice tendered the rent due for May and would tender it again, thus creating no hardship on the landlords if execution were stayed, and that all future rent pending the appeal would be paid. The Surbaughs asserted that they met the eligibility requirements of Legal Aid Bureau, Inc. and that the filing of a bond would be a hardship. The District Court granted the motion in part, staying execution pending the appeal upon the posting of a $600 bond. The Surbaughs posted that bond, in full, on June 1, 1987.

Predictably, the posting of the bond—equivalent to more than three months rent—left the Surbaughs unable to pay their June rent, and so, on June 4, like clockwork, the landlords filed another action in District Court. On June 16, through appellants, the Surbaughs sought a reduction in the bond to $195, pointing out that not only was the $600 excessive but that, if the bond were reduced, the reduction could be applied to pay the June rent in full. The landlords responded with a motion under Rule 1–341 for costs and attorneys' fees, claiming that the motion to reduce the bond was filed in bad faith.

The District Court declined to act on either motion on the ground that the appeal had divested it of jurisdiction. Compare Md.Rule 1–402(d); *O'Donnell v. McGann*, 310 Md. 342, 529 A.2d 372 (1987). On the 17th, the court heard the action for the June rent, entered judgment for the landlords for repossession without right of redemption as well as for the rent due, stayed execution until July 17, and set appeal bond at $225. Within the next two days, appellants, on behalf of the Surbaughs, (1) filed a motion in Circuit Court, in the appeal concerning the May rent, seeking a reduction in amount of the appeal bond, and (2) filed an appeal from the judgment entered with respect to the June rent. The District Court then *increased* the amount of bond set in the June case from $225 to $305, the latter amount being posted on July 17. On July 15, the Circuit Court denied the motion seeking a reduction in the $600 bond.

The two appeals, which, for convenience, we shall refer to as the May appeal and the June appeal, were consolidated for trial in the Circuit Court on August 5, 1987. Meanwhile, the rent due for July and August was paid, and accepted.

The principal issue in the May appeal was whether the tendering of the rent and the costs before and at trial in the District Court precluded that court from entering judgment for the landlords. That, in turn, depended on which of two subsections of Real Prop. art., § 8A–1701 governed—§ 8A–1701(c)(5) or § 8A–1701(e). The argument advanced in the

June appeal centered on the collateral effect of the alleged errors in the May case—that the erroneous judgment and the onerous bond are what prevented the Surbaughs from making the June payment.

Title 8A of the Real Property article is a comprehensive statute governing the landlord-tenant relationship in mobile home parks. Subtitle 17 deals generally with the landlord's repossession remedies; § 8A–1701 sets forth the procedure for repossession upon the tenant's failure to pay rent in timely fashion. To appreciate the issue raised by the Sur-baughs, it is necessary to examine several provisions of § 8A–1701 in context.

Subsection (a) allows the park owner to repossess the leased premises whenever the tenant fails to pay the rent when due and payable. To enforce that right, subsection (b) requires the landlord to file a complaint with the District Court and provides for service of a summons directing the tenant to appear for trial on the fifth day after the filing of the complaint. Subsection (c) sets forth what is to occur at trial. It states, in five enumerated paragraphs, that:

(1) If, at trial on the fifth day, the court finds that "the interest of justice will be better served by an adjournment to enable either party to procure his necessary witnesses," it may "adjourn the trial for a period not exceeding 1 day," or longer if by consent.

(2) If, "when the trial occurs," the court finds that the rent, or any part of the rent, is "actually due and unpaid," the court "shall determine the amount of rent due and enter a judgment in favor of the park owner for possession of the premises."

(3) When entering the judgment, the court shall also order the tenant to yield possession "within 30 days after the trial."

(4) The time for surrendering possession may be extended upon presentation of a physician's certificate certifying that surrender during the 30–day period could endanger the health of an occupant.

(5) "However, if the resident, or someone for him, at the trial, or adjournment of the trial, tenders to the park owner the rent *determined by the court to be due and unpaid,* together with the costs of the suit, *the complaint against the resident shall be entered as being satisfied.* (Emphasis added.)

Appellants' argument on behalf of the Surbaughs was premised on subsection (c)(5)—that the rent "determined by the court to be due and unpaid" and the costs were tendered to the landlords "at the trial" and that the complaint should therefore have been "entered as being satisfied."

Subsection (d) provides for the enforcement of a judgment in favor of the landlord. In essence, it states that, if the tenant fails to comply with the judgment within 15 days, the court shall issue a warrant of restitution directing the constable or sheriff to remove the mobile home and its attachments and contents in order to allow the landlord to repossess the land.

Subsection (e), captioned "Right to redemption," then provides that:

"In any action of summary ejectment for failure to pay rent *where the park owner is awarded a judgment giving him restitution of the leased premises,* the resident shall have the right to redemption of the leased premises by tendering in cash, certified check, or money order to the park owner or his agent all past due rent and late fees, plus all court awarded costs and fees, at any time before actual execution of the eviction order. *This subsection* does not apply to any resident who has received more than three summonses containing copies of complaints filed by the park owner against the resident for rent due and unpaid in the 12 months prior to the initiation of the action to which this subsection otherwise would apply."

(Emphasis added.)

The landlords argued, and the District and Circuit Courts agreed, that subsection (e) governed the case, to the exclu-

sion of subsection (c)(5)—that whatever rights the Surbaughs had would be under subsection (e) and that they had no rights under subsection (e) because, as three or more summonses based on complaints for nonpayment of rent due had been received by them in the preceding 12 months, that subsection did not apply. Indeed, it was the temerity of appellants in challenging that conclusion by the District Court that led to the Rule 1–341 judgment. In that regard, the Circuit Court said, in relevant part:

"Now, I don't agree with your interpretation of subsection c 5. I think the thrust and intent of the law is that if the tenant has had three actions brought against them within the past 12 months, they lose all rights of redemption as set out in 5, subsection e; however—and I will admit there was tender of May payment. However, even if subsection 5 did come into play and it was determined there was no tender of rent at or prior to trial in June, for failure to pay the June rent; therefore, subsection e does come into play.

* * * * * *

Now, as to the request for fees, gentlemen, I think that this case had absolutely no basis of justification for appeal. It's a case of a tenant who's been a bad tenant and the landlord had to file six suits against that tenant under the landlord-tenant law. I think they had every right at this point to evict the tenant. I don't find any justification or basis whatsoever for this appeal.

It's cost the landlord a great amount of money, a great amount of time and a great amount of consternation. I think the appeal was frivolous. I think it was an appeal to be obstructive to justice as justice should be done and it's done exactly that, it's obstructed. It's taken the time up of all the parties and the Court.

I can't find any justification whatsoever for it. I think it was a bad faith appeal. I can't blame Mr. and Mrs. Surbaugh because they are following advice of Counsel, but frankly, I think they got bad advice.

I'm going to consider and award you your attorneys' fees of $960.00 against Mr. David P. Bokow and the Legal Aid Bureau and it is hereby reduced to judgment in this case."

### (3) *Discussion And Conclusion*

■ As we made clear in Part (1) of this Opinion, the question of whether the District and Circuit Courts were correct in their construction of § 8A–1701 is not directly at issue in this appeal. As no timely petition for *certiorari* was filed seeking review by the Court of Appeals, the judgment of the Circuit Court affirming the judgments of the District Court has become final and unimpeachable. In considering the $960 judgment against the attorneys, however, we cannot avoid examining and evaluating the asserted basis for that judgment. In order to determine whether the Circuit Court abused its discretion or was clearly erroneous in its finding that the appeals were taken without substantial justification or in bad faith, we have to determine whether there was any legitimate basis for the appeals, and that, inevitably, requires an evaluation of the District Court judgments from which the appeals were taken.

With respect to the May appeal, we do not agree with the conclusion reached by the Circuit Court, and that apparently reached by the District Court, that the case is controlled by § 8A–1701(e) to the exclusion of subsection (c)(5). It is clear to us that these two subsections relate to different stages of the proceeding; neither is subsumed in the other; neither controls the other. Subsection (c)(5) has to be read in context with subsections (c)(2) and (c)(3). At trial, the court must first determine how much rent is due; only after it determines an amount is due may it enter a judgment for possession and order the tenant to yield possession within 30 days. It is at that point, however—when the court has determined both liability and amount due—that the tenant may tender "the rent determined by the court to be due and unpaid, together with the costs of the suit," whereupon

"the complaint against the resident shall be entered as being satisfied." That is not a "redemption" of the leased premises, for there is nothing then to redeem. No judgment is to be entered in that circumstance other than a satisfaction or dismissal of the complaint.

Subsection (e), on the other hand, by its own clear terms, does not come into play until after the landlord has been "awarded a judgment giving him restitution of the leased premises." Of course, if the tenant, pursuant to subsection (c)(5), has tendered the rent and costs at trial, there should be no such judgment of restitution, and subsection (e) would never become applicable.

It is evident to us that, in enacting both subsections as part of one comprehensive law, the Legislature endeavored to balance the equities of the parties—the interest of the tenant in maintaining his home against the right of the landlord to the prompt payment of rent free from vexatious and repeated breaches by the tenant. By adding the limiting language only to subsection (e), it very plainly struck the balance in the tenant's favor at the early stage of the proceeding. A plain reading of the statute, therefore, leads us to conclude that the May appeal was not without substantial justification or in bad faith. Indeed, the appeal was fully justified and should have been successful; it was the judges, not appellants, who misread the statute. To the extent that the $960 judgment was based on the May appeal, it was erroneous as a matter of law.

The June appeal stands on a somewhat different footing; there was no tender of rent in that case, and thus no purely legal basis for resisting or appealing the District Court judgment. It is clear, however, from the uncontradicted submission to the court, that the failure to pay the June rent was the direct result of the District Court's requiring a $600 bond to protect a $208 judgment that was itself erroneously entered. In that circumstance, and in light of the fact that a failure to appeal the June judgment would render any victory in the May case entirely nugatory inso-

far as retention of possession is concerned, we believe that the court abused its discretion in finding the June appeal to be without substantial justification or in bad faith.

 As a parting comment, we think it worth repeating some of the things we thought we had made clear in *Dent v. Simmons, supra,* 61 Md.App. 122, 485 A.2d 270. Rule 1–341 represents a limited exception to the general rule that attorney's fees are not recoverable by one party from an opposing party. It is intended to prevent parties and lawyers from *abusing* the judicial process by filing or defending actions and proceedings "without substantial justification" or "in bad faith." It is not intended to punish legitimate advocacy. As we said at the very beginning of *Dent,* "[f]ree access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a *colorable* claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties." *Id.,* 124, 485 A.2d 270, quoting from *Young v. Redman,* 55 Cal.App.3d 827, 838, 128 Cal.Rptr. 86 (1976).

We note in this regard that appellants brought to the attention of the Circuit Court the fact that the language of § 8A–1701 was patterned closely upon the language of the general summary eviction statute, Real Prop. art., § 8–401, and that the Circuit Court for Baltimore City, in at least one case (*Miller v. Community Services, Inc.,* Circ. Ct. No. 2, Case No. A/45325/93—A/140/75) had construed § 8–401 essentially as we have construed § 8A–1701. Even if the court were inclined to disagree with the conclusions reached by its sister court in Baltimore City, we find it extraordinary and wholly inappropriate that it would regard a position consistent with those conclusions as being without substantial justification or taken in bad faith.

JUDGMENT REVERSED; APPELLEES TO PAY THE COSTS.